## SATTERTHWAITE et al. v. VAN DISSEN et al.

No. 13680—Opinion Filed May 27, 1924.

1. **Vendor and Purchaser—"Perfect Title."**

A perfect title is one free from litigation, palpable defects, and grave doubts, and consists of both legal and equitable title fairly deducible of record.

2. **Same—Merchantable Title—Oil and Gas Lease on Ward's Land—Correction of Terms by Nunc Pro Tunc Order.**

Where a court ordered a sale of an oil and gas lease for a term during the minority of the ward, and confirmed the sale, the power of the court to correct the same by nunc pro tunc order by making the term of the lease five years is of such grave doubt that the title based thereon would not constitute a merchantable title.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Pontotoc County; J. W. Bolen, Judge.

Action by J. L. Van Dissen against T. W. Satterthwaite and others. From judgment in favor of the defendants. Plaintiff brings error. Reversed and remanded.

Robert Wimbish and W. C. Duncan, for plaintiffs in error.

I. M. King and Jno. P. Crawford, for defendants in error.

Opinion by PINKHAM, C. This action was instituted in the district court of Pontotoc county by the plaintiff in error, as

plaintiff, against the defendants in error, as defendants, to recover the sum of $6,750.

The parties will be referred to as plaintiff and defendants, as they appeared in the trial court.

The petition alleged, among other things, that the said sum of $6,750 was the purchase price of an assignment of an oil and gas lease upon 30 acres of land sold to plaintiff by the defendant Van Dissen; that the money, assignment, and a contract were placed in escrow with the Security State Bank of Ada, Okla., on the 30th day of April, 1921, pending the submission to plaintiff of an abstract showing a good and merchantable title to said premises; that the abstract was furnished plaintiff within the time named, and that the attorneys for plaintiff found objections to the title which defendant endeavored to correct, but that plaintiff found the title not to be a good and sufficient title, and rejected the same, and subsequently notified the defendant, Van Dissen, to instruct the defendant, Security State Bank, that it pay to plaintiff said sum of $6,750, which both defendants failed and refused to do.

The defendant, Security State Bank, in its answer denied its liability, but admitted that it was the escrow holder whom both parties agreed to keep harmless, and offered to pay the money to the party found entitled thereto.

The defendant Van Dissen, for answer, admitted the execution of the contract and the assignment of the oil and gas lease upon 30 acres of land to plaintiff, and the deposit in the Security State Bank of the money involved, assignment, and contract, but denies that he failed to submit a good and merchantable abstract to plaintiff. but affirmatively avers that he did, within the time provided in said contract, furnish plaintiff an abstract of title which showed a good and merchantable title.

For cross-petition, the defendant Van Dissen alleged that he has complied with his agreement to furnish plaintiff with a good and merchantable title: that the money so placed in escrow is due the defendant, and prays for a judgment for $6,750, with 6 per cent. interest from May 1, 1921.

The issues thus joined were tried to a jury and resulted in a verdict for the defendant for the full amount sued upon.

Motion for new trial was overruled, exceptions saved, and the cause comes regularly on appeal to this court.

There are numerous assignments of error but counsel for plaintiff in their brief have grouped the same under four propositions.

The first proposition is that "defendant failed to furnish the plaintiff an abstract of title showing a good and merchantable title to the assignment and the lease assigned therein to be in him."

The following are the facts necessary to be considered:

On and prior to the 19 day of April, 1921, the land described in the plaintiff's petition was the property of Goldie Lewis, a minor. At that time one M. C. Copeland was acting as her guardian.

On the 14th day of April, 1921, the said guardian filed in the county court of Pontotoc county his petition to lease the lands of his ward for oil and gas mining purposes. The said Goldie Lewis was at the time a minor and would become 18 years of age in August or September, following.

On the 15th day of April, 1921, the county court of Pontotoc county made its order authorizing the sale of an oil and gas mining lease on these and other lands "for a term of years during the minority of his said ward and as much longer thereafter as oil or gas is found in paying quantities."

On the 19th day of April, 1921, the guardian gave notice that he would make such sale for cash upon confirmation.

The guardian filed his return and report of sale reporting that he had made such sale to the defendant J. L. Van Dissen for a bonus of $7,100, and on the same day the county court made an order confirming the said sale for a period "during the minority of the said ward and as long thereafter as oil and gas is found in paying quantities."

Thereupon the guardian was ordered to execute and deliver the lease to the said Van Dissen.

On the 30th day of April, 1921, the plaintiff and defendant Van Dissen entered into an agreement by the terms of which Van Dissen represented that he was the owner of a certain five year oil and gas mining lease on the land described in plaintiff's petition.

By the terms of said agreement, Van Dissen agreed to sell and the plaintiff agreed to buy from him an assignment of said oil and gas mining lease for the sum of $6,750, subject to the following conditions.

It was agreed that the defendant Van

Dissen should furnish to the plaintiff an abstract of title showing a good and commercial title to the said oil and gas lease to be in Van Dissen, and to submit the same to the plaintiff, and that the plaintiff should have five hours from the time of the receipt of said abstract within which to examine said title, and if any requirements should be made by plaintiff's attorneys to show a good and perfect title, then the defendant was to have a reasonable time within which to comply with such requirements, and the abstract should then be resubmitted to the attorneys of the plaintiff, who should have five hours from the time of such resubmission within which to make further examination.

It was provided that if the abstract failed to show a good and commercial title in the defendant then in that event the purchase price of said lease should be returned to the plaintiff in this case.

Plaintiff's attorneys declined to pass said title as being good and merchantable and pointed out some defects which they considered fatal to the title.

Thereafter the defendant proceeded to have the county judge enter an order termed a "nunc pro tunc" order which changed the original order of sale from a lease during the minority of the minor to a lease for five years, and again tendered the title to the plaintiff's attorneys, who declined to pass the title and refused to advise the plaintiff to pay for the same, and shortly thereafter demanded that the defendant release $6,750, that was held in escrow by the Security State Bank.

It thus appears without conflict that the notice of sale gave no description of the kind and character of lease that was to be sold except the one authorized by the county court, which was "during the minority of the ward and as much longer thereafter as oil and gas is found in paying quantities."

We do not think these orders could be corrected by nunc pro tunc orders. The purchaser at the sale, according to the record, could only purchase a lease "during the minority."

The lease, as ordered sold and advertised, under the facts in the case, would have but a short time to run—from about April 15 to September or October of the same year.

The notice conveyed the information that nothing would be sold except a lease during minority. This, under the facts in the case, would make the probate proceeding subject to an attack upon the grounds of fraud as it certainly would be a fraud upon the minor to authorize a sale upon the lease which would only extend for a few months and then to sell one that extended for a period of five years.

In the case of Campbell v. Harsh, 31 Okla. 437, 122 Pac. 127, it is said in the second paragraph of the syllabus:

"A perfect title is one free from litigation, palpable defects, and grave doubts, and consists of both legal and equitable title fairly deducible of record."

We are clearly of the opinion that it could not be said as a matter of law that the title under the facts disclosed by the record in this case was a merhantable title. We are further of the opinion that the court misdirected the jury in advising them to the effect that if the minor after becoming of age had ratified the lease, it would have to be accepted by the plaintiff.

There was no attempt to ratify the lease by the minor at the time the title was rejected, and under the contract between the parties the plaintiff only had five hours in which to reject the same.

If the title was not a merchantable title at that time the plaintiff had a right to reject it.

The court could, or might, correct its orders to speak the truth, but where a court orders a certain kind of lease to be sold and the same is so advertised and a different lease is sold and one that would be more valuable the proceedings would not be void but would be subjected to be attacked as a fraud upon the minor and a nunc pro tunc order would not cure such defect.

This nunc pro tunc order attempted to be entered is a confession on the part of the defendant that he did not have a merchantable title.

A number of other propositions are discussed in the brief of plaintiff, but in the view we take of this case it will not be necessary to discuss them.

For the reasons stated, we think this cause should be reversed and remanded, with directions to vacate the judgment and take such further action not inconsistent with the views herein expressed.

By the Court: It is so ordered.