## AMMERMAN et al. v. KARNOWSKI et al.

No. 13736—Opinion Filed Oct. 21, 1924.

Rehearing Denied March 31, 1925.

1. **Vendor and Purchaser—Contract to Convey—Executory Obligation to Convey Clear Title—Acceptance of Deed Prior to Receipt of Abstract Showing Defective Title.**

Where a vendor and purchaser enter into a written contract for the conveyance of lands, by the terms of which the vendor agrees to furnish abstract showing "clear title of record," but the consideration is paid and possession and deed delivered prior to the completion and furnishing of the abstract, this executory obligation of the vendor is not thereby discharged where the abstract, when completed, shows defective title to a part of the lands conveyed.

2. **Same—Discharge of Obligation—Intent —Evidence.**

In such case, where a part of the consideration is evidenced by note and mortgage and the purchaser intends to borrow money on the land to pay the note and mortgage, and this is known to the vendor, evidence of this is competent and material upon the question whether it was the mutual intention of the parties in the delivery of the deed and possession to thereby discharge the vendor's executory obligation expressed in the contract.

3. **Same—Clear Title of Record.**

Clear title of record connotes freedom from apparent defects, grave doubts, and litigious uncertainties and is such title as a reasonably prudent person, with full knowledge, would accept. A title dependent for its validity on extraneous evidence, ex parte affidavits, or written guarantees against the results of litigation is not clear title of record, and is not such title as equity will require a purchaser to accept.

4. **Same—Defective Title—Rescission.**

A purchaser taking possession and paying part of the consideration prior to the furnishing of abstract under a contract that he shall receive clear title of record may, if the title tendered is not clear, tender back the title, possession, and all other benefits received and rescind the contract. This may be done by cross-petition in an action for the balance of the purchase price.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Craig County; A. C. Brewster, Judge.

Action by Elbert Ammerman et al. against Peter Karnowski et al. to foreclose a mortgage. From a judgment in favor of defend-

ants upon their cross-petition, plaintiffs bring error. Affirmed.

This action was commenced in the district court of Craig county, October 10, 1921, by plaintiffs filing therein their petition against the defendants upon a certain promissory note for the sum of $8,000, and to foreclose a mortgage securing same.

Defendants answered by a general denial except as to the execution of the note and mortgage, which was admitted. By cross-petition defendants alleged, in substance, that the note and mortgage sued on were given to evidence and secure the balance of the purchase price of 200 acres of land purchased by defendants from plaintiffs; that by the terms of the contract between the parties plaintiffs agreed and bound themselves to furnish to the defendants an abstract showing clear title of record; that plaintiffs had breached this term and condition of their contract to convey in that the abstract which they furnished did not show a clear title of record to the 200 acres of land which they agreed to convey, but that the title to the entire 200 acres as shown by said abstract was defective, and that by reason thereof said note and mortgage were without consideration; defendants tendered into court their quitclaim deed to the property and asked for rescission of the contract and cancellation of the note and mortgage sued on, and prayed for recovery of the $4,000 which they had paid on the purchase price of the land, with interest thereon at 6 per cent., less the rents and profits derived from the lands during the time defendants had been in possession of the same.

Plaintiffs filed answer to this cross-petition and the defendants filed a reply thereto, and upon the issues thus framed the cause was tried to a jury on January 20, 1922, resulting in a verdict in favor of defendants for $3,825.29, upon which verdict judgment was rendered canceling the contract and deed, and in favor of defendants for the sum of $3,825.29, with interest at 6 per cent. from January 21, 1922, and the judgment was made a lien upon the lands described in plaintiffs' petition.

The contract involved in this action, omitting the formal parts and the description of the property, reads as follows:

"Party of the first part is to furnish to party of second part abstract of title showing clear title of record. Party of first part is to pay the taxes on above described premises for year 1919, and all previous years. Party of first part is to assign to party of the second part his stock in Telephone Company, Line L. M., and J. R. Line.

Party of first part is to give possession to above described premises by October 15th, 1919, or not later than January 1st, 1920.

"It is further agreed and understood that party of the second part is to make a cash payment of $2,000 at the time possession is given and it shall be option of party of the second part to make this payment at any time after October 15th, 1919, but it must be paid by January 1, 1920. It is further agreed and understood that the party of second part is to pay a further payment of $2,000 to party of first part within one month of date first payment is made or possession is given. It is further agreed and understood between parties that party of first part is to accept a mortgage and note, which mortgage is to be a first lien on above described premises for deferred payment of above described land and which note and mortgage is to draw interest at the rate of 7 per cent. per annum.

"It is further agreed and understood that above note shall run for a period of one year from date it is made and that party of second part shall have option to take it up at any time before the maturity of this note, any or the whole amount, and interest shall stop on the amount so paid.

"It is further agreed and understood that party of second part is this day depositing in escrow in the Farmers State Bank of Vinita, his check made payable to E. Ammerman, for $500. It is further agreed and understood that party of first part is to put up in escrow in Farmers State Bank of Vinita, his deed to above described lands, which deed and check are to be held by said bank until this deal is closed, which deal is to be closed at time possession is given to this property, which is to be not later than January 1, 1920."

Other matters material to be considered in a determination of the case will be stated in the opinion.

The parties will be hereafter referred to as plaintiffs and defendants, respectively, as they appeared in trial court.

Clark & Roberts and Kornegay & Probasco, for plaintiffs in error.

Rainey & Flynn and Calvin Jones, for defendants in error.

Opinion by LOGSDON, C. There are 35 assignments of error in the petition in error, but there is no effort to follow them seriatim in the briefs. Their discussion here will be comprehended by the answers to the following questions:

1. Was there such an acceptance of the deed by defendant as relieved plaintiff from the obligation of his contract to convey a "clear title of record"?

2. If not, did the abstract furnished show a clear title of record?

3. Were any of the instructions of the court to which exceptions were taken, prejudicially erroneous?

4. Are the verdict and judgment sustained by the evidence?

It is disclosed by the record that on July 22, 1919, plaintiff and defendant entered into a written contract by the terms of which plaintiff agreed to convey and defendant agreed to purchase 200 acres of land for a consideration of $12,000. On the same day plaintiff and his wife executed a warranty deed to the land in favor of defendant. This contract and deed, together with $500 deposit on the purchase price, were placed in a bank to be there held until possession was delivered by plaintiff, when the deal between the parties was to be closed. By this contract defendant bound himself to pay $4,000 on or before January 1, 1920, and to execute a note and mortgage for the balance of $8,000, payable one year after its date. Plaintiff, by said contract, bound himself to furnish defendant an "abstract of title showing clear title of record."

It is not disclosed by the record just when possession was given and deed delivered to defendant, but the $4,000 was paid December 23, 1919, and on the same day the note and mortgage sued on were executed, so it may be assumed that possession was given and deed delivered on or before that date. It is contended by plaintiff that this delivery of deed and possession operated to discharge the executory obligation of plaintiff, expressed in the contract, to furnish "abstract of title showing clear title of record." In other words, that the acts of defendant in taking possession, receiving the deed, and executing the note and mortgage back constituted an acceptance of the title which the deed purported to convey.

The testimony on both sides is in agreement as to the intention of defendant to obtain a loan on the land as a means of paying it out. The only material disagreement in the testimony on this point is as to whether plaintiff knew that the State School Land Department was to be satisfied with the title. It may therefore be said that both parties to the contract knew that someone other than defendant was to be satisfied with the title. Plaintiff contends that defendant's attorney was to approve the title, while defendant contends that the School Land Department was to approve it. For the purposes of the present

discussion it will be assumed that plaintiff's contention in this respect is the correct one, and that the title was to be approved by defendant's attorney.

It could not have been approved by him when the deed was delivered December 23, 1919, because the abstract was not certified by the abstracter until 3 p. m., December 30, 1919. Therefore, the acceptance of the deed by defendant on December 23rd, could only have been conditional, as contended by him. After the abstract was furnished defendant's attorney disapproved the title to 20 acres of the land, and thereafter, by an instrument acknowledged May 13, 1920, plaintiff sought to meet this objection.

It is therefore concluded that there was not such an acceptance of the deed by defendant as relieved plaintiff from the executory obligation of his contract.

Was the title shown by the abstract a clear title of record?

After the abstract had been examined by the attorney for defendants he disapproved the title to 20 acres of the land. This 20 acres is referred to as the Wade S. Miller land. Miller was a minor and the land was sold by his guardian through the county court of Tulsa county. The petition for the sale of this land was not verified as required by Comp. Stat. 1921, sec. 1470. Apparently conceding the defective title to this 20 acres, plaintiffs executed an instrument acknowledged May 13, 1920, the obligatory paragraph of which reads:

"Now, Therefore, in consideration of $1.00 and as a part of the consideration to the said Ammerman for the acceptance by the said Karnowski of said deed in fulfillment of said contract, the said E. Ammerman and Birdie Ammerman, his wife, hereby agree with the said Peter Karnowski, his heirs and assigns, that the covenant of warranty, together with all the rights arising therefrom shall be and the same is hereby extended until the full expiration of the period of time within which said minor and all persons claiming under him, may institute an action for the recovery of said twenty acres of land, hereby acknowledging to the said Karnowski that until the expiration of said period of time we and our heirs will respond to all the obligations of said covenant of warranty, even though the statutory period of our liability thereunder may have expired before the expiration of the time within which said minor might institute an action to recover said land."

Defendant Peter Karnowski testified that

he refused to accept this as a discharge of the original contract except upon condition that it was approved as the basis for the loan which he was seeking to procure. This testimony is not contradicted.

As to another 20 acres, referred to as the Morris F. Isbell land, requirements were made by the School Land Department as conditions to the approval of this title. One requirement was the procuring of the allotment certificate; another was that the order removing restrictions must show the roll number of the allottee; another was the procuring of an affidavit of identity as to one of the grantees through whom title had passed, and whose name appeared in the abstract in two different ways.

As to the 160 acres, known as the Bessie M. and Daniel O. Dotts land, the School Land Department disapproved the title for the reason that the guardian's deed was executed more than one year after the entry of the order of sale, the department holding that this rendered the title uncertain under Comp. Stat. 1921, sec. 1479.

These objections to the title to the Isbell land and to the Dotts land are merely referred to as showing the justifiable doubts of the defendants as to the character of title they were receiving. As to these two tracts plaintiffs argue in their briefs against the validity of the objections to these two titles. It is not considered necessary to pass upon these matters in reaching a conclusion on this case in view of the undisputed record on the Miller land.

In the recent case of Abraham et al. v. Homer, 102 Okla. 12, 226 Pac. 45, this court said:

"In probate cases a proceeding for a sale of real estate is a distinct and independent proceeding, although had in the general cause (course) of administration."

After defining quasi jurisdictional facts, as to which statutory requirements are held to be merely directory, this court said further:

"On the other hand, if it appears that in the enactment of such statute the lawmakers, while providing a step in the procedure, had uppermost in mind the effect of such step upon the judgment thereafter to be rendered, and intended the taking of such step in the procedure as a condition precedent to the existence of the judicial power of a court to thereafter render the particular judgment, then such facts, while in a sense being quasi jurisdictional, are clearly jurisdictional facts, necessary to the existence of the third element of jurisdiction. Such statute is a mandatory one. A directory statute of procedure, such as is above considered, has no direct relation to the substance of the adjudication to be made, while compliance with the mandatory statute above illustrated reaches into the power of the court to render the decree, and the result of such compliance inheres in such decree as a material and substantial part of the judgment itself."

It is therefore evident that the requirements of Comp. Stat. 1921, sec. 1470, including the requirement for verification of the petition to sell, are mandatory and therefore jurisdictional as initial steps in this "distinct and independent proceeding", and at least substantial compliance therewith is necessary "as a material and substantial part of the judgment itself". Sockey et al. v. Winstock, 43 Okla. 758, 144 Pac. 372; Pyeatt et al. v. Estus et al., 72 Okla. 160, 179 Pac. 42; Dosar et al. v. Hummell et al., 89 Okla. 152, 214 Pac. 718.

That plaintiffs understood this Miller title to be of doubtful validity is shown by the instrument which they acknowledged May 13, 1920, and the unverified petition to sell appearing in the abstract furnished, such abstract did not show "clear title of record."

In the case of Campbell v. Harsh, 31 Okla. 436, 122 Pac. 127, this court said:

"A purchaser under a contract to make a perfect title is not required to resort to evidence dehors the record. It is not sufficient that the title rendered is capable of being made good by the production of affidavits or other oral testimony. It must be good of record."

In Groves v. Stouder et al., 58 Okla. 744, 161 Pac. 239, Justice Hardy used this language:

"One who contracts to convey a certain character of title to real estate should be prepared and able to convey to the grantee an estate or interest therein substantially corresponding with that bargained for and agreed to be sold."

The abstract which plaintiffs furnished, having failed to show clear record title to all of the land agreed to be conveyed, defendants cannot be required to accept a partial performance. The attitude of the courts in such cases has been aptly expressed by Justice Harrison in the case of Farm Land Mortgage Co. et al. v. Wilde, 41 Okla. 45, 136 Pac. 1078:

"The courts generally hold that parties have the right to make any contract which is not unlawful nor against public policy. They have the right to provide for an arbitrator whose decisions, in the absence of fraud, shall be final. They have the right, in mak-

ing a contract for the sale of land, to make an attorney or any one else exclusive and final judge as to whether or not the title is defective. In such case, the courts are inclined to leave the parties to abide by the contract as they have made it, and not to make a different one."

A clear title of record, such as plaintiffs bound themselves to convey, must be deemed to mean a title free from apparent defects, grave doubts, and litigious uncertainties, and one which is not required to be perfected by ex[traneous evidence, ex parte affidavits, or written guarantees against the result of possible litigation. Such a title plaintiff failed to furnish.

Plaintiffs excepted to each paragraph of the court's instructions numbered 1 to 11, inclusive. Instruction No. 1 placed the burden of proof upon the defendants. Instruction No. 8 directed the jury as to the form of its verdict, No. 9 told the jurors that they were the exclusive judges of the credibility of the witnesses, No. 10 directed the jury to consider the instructions of the court as a whole, and not to single out any one paragraph and be governed by it alone, while No. 11 directed that nine or more jurors might return a verdict. No error is apparent in these instructions. Instruction No. 2 authorized the jury to consider all of the facts and circumstances in evidence in determining whether or not defendants accepted the deed of July 22, 1919, in discharge of the executory obligation of the plaintiffs under their contract of the same date. No prejudicial error is apparent in this instruction. Instruction No. 3 defined a contract both express and implied. This instruction embraces a correct statement of the law. Instruction No. 4 related to the purposes for which a minor's land may be sold by his guardian, and was in conformity to the statutory requirements, and instructed the jury that such requirements should be substantially complied with. No erroneous statement of the law is apparent in this instruction, but if there was error at all it was harmless in view of the conclusions heretofore stated. Instruction No. 5 · authorized the jury to determine from all the facts and circumstances in evidence whether the abstract furnished by plaintiffs to defendants showed a clear title of record at the time this action was commenced, and in the event the jury should determine that there was not a clear title of record shown by the abstract they should find for the defendants, unless they further found and de-

termined that defendants accepted the title in the condition shown by the abstract. This instruction fairly presented defendants' theory of the case, and no prejudicial error to the plaintiffs is apparent by reason thereof. Instruction No. 6 told the jury that an order of the county court confirming a sale of minor's property by his guardian does not operate to pass title, but that a deed must be executed and delivered by the guardian. No error is apparent in the language in this instruction. Instruction No. 7 told the jury that if it should find and determine from all of the evidence that it was the duty of plaintiffs to perfect the title which they had tendered to the defendants and they failed to do so the verdict should be in favor of the defendants. When considered as a whole these instructions appear to fairly state the law to the jury applicable to the facts in this case, and if any of the paragraphs are verbally inaccurate it is not apparent that the jury could have been misled or misinformed thereby, for the reason that the jury was expressly directed to consider the instructions as a whole and not to be guided by any single paragraph thereof.

Numerous instructions were requested by the plaintiffs, being 12 in number. An examination of these instructions discloses that a number of them either incorrectly stated the legal proposition involved or sought to have it applied to a state of facts to which it was inapplicable. Those paragraphs of the requested instructions which correctly state the law, and to which plaintiffs were entitled, appear to have been fairly covered by the instructions of the court. No reversible error is therefore apparent in the refusal of these requested instructions.

An examination of the entire record shows that there is ample evidence, if believed by the jury, to sustain the verdict which was rendered. Both sides having tried the case to the jury without objection as if it were a law action, the trial court so treated it, and based its judgment upon the general verdict rendered. This precludes this court from considering and weighing the evidence for the purpose of determining upon which side lies the preponderance.

It is therefore concluded upon the whole case that no reversible error is apparent in the record, and that the judgment of the trial court should be in all things affirmed.

By the Court:    It is so ordered.