## KOUTSKY v. PARK NAT. BANK et al.

No. 21883.    Feb. 20, 1934.

Chas. E. Wells and H. W. Broadbent, for plaintiff in error.

Tom Waldrep and Wm. R. High, for defendants in error.

PER CURIAM. Plaintiff in error was plaintiff and defendants in error (except L. Wade, who was only a nominal party and who filed disclaimer) were defendants in the court below, and they will hereafter be referred to as they appeared in that court.

On the 10th day of August, 1929, the defendant L. Wade was trying to promote a drilling deal on certain town lots in Asher, Okla., which were owned by the defendants in error. On that date, defendants executed a lease or drilling contract with him (L. Wade) on the ordinary producers' 88 form, and providing that:

"If no well be commenced on said land on or before the 15th day of September, 1929, this lease shall terminate as to both parties. * * * Actual drilling to begin on lots 18 or 19, block 37, Asher, Okla., on or before October 1, 1929, and to continue drilling with all due diligence and said well shall be completed and producing in pipe line on or before November 20, 1929."

At the same time and place, and as part of the same transaction, Wade assigned said lease or drilling contract (except 5/64 interest retained by him) to the plaintiff, John W. Koutsky; and the defendants and Wade and Koutsky entered into a separate escrow agreement providing that defendants were to "furnish to the party of the second part, and his assigns, a good abstract title to said property to be passed upon, examined, and approved by the attorneys of the second party and his assigns. Said abstracts to be examined and returned on or before 20 days from this date and the party of the second part to have 20 days from the return of said abstracts to meet all requirements, if any, made by the attorneys of the parties of the first part and his assigns."

At the same time (August 10, 1929), Koutsky put up in escrow in the defendant

bank and with the escrow agreement referred to, the sum of $2,000 for the performance of the contract and the drilling of the well, and with an additional $1,000 to be put up by him on September 15, 1929,

"Said monies to be subject to the order of Josephine Cotton, Henry Cotton, Clyde Walker, Frank Walker and Sarah Walker, in the event that said parties of the second part, L. Wade, shall fail to carry out his part of this contract * * * that actual drilling shall begin on or before October 1, 1929, or to complete said oil or gas well on or before November 20, 1929."

The last $1,000 was never put up by Koutsky, as the contract had failed from the standpoint of both parties before September 15, 1929, and both parties were at that time claiming the first $2,000.

Although the lease was dated the 10th day of August, 1929, it was not acknowledged by Frank Walker and Sarah Walker until the 15th day of August, 1929, and it was thereupon delivered to plaintiff, and on the next day put to record, and plaintiff submitted his title to his attorney (Mr. Wells of Shawnee) for examination.

Frank Walker and Josephine Cotton were the owners of the larger part of the lots embraced in the leases to Wade, and they had, on the 19th day of July, 1929, entered into a contract for lease on their same lots with Geo. B. Orr; and, after the defendants had made the Wade lease and the escrow agreement going therewith, Orr (on the 20th day of August, 1929) put his contract to record, together with his affidavit that:

"Said affiant hereby gives notice to the public that he claims said oil and gas lease, and all parties are hereby warned not to purchase or attempt to acquire any interest therein, as said oil and gas lease is of right, under the terms of this contract, the property of said Orr, he standing ready at this time and has been at all times ready and willing and able to comply with the terms of said contract."

The attorney to whom the abstract was submitted gave his written opinion calling attention to this Orr contract and affidavit. but the testimony shows that the written opinion has been lost and its exact statements do not appear in the record. However, it does appear from the testimony on both sides that immediately after the recording of this Orr contract and affidavit came to the knowledge of Koutsky, he and Wade took it up with the defendants. Henry Cotton seems to have been the principal acting party on the part of the defendants, and his testimony about plaintiff's complaint and what transpired thereafter is as follows:

"Q. Did he say anything about this Orr contract? A. Yes. Q. What did he say about that? A. Well, he said that Mr. Orr had filed a contract of record up there after he put his of record. When he put his of record his title was clear and there was nothing against it, but five or six days after he had filed his, then comes Mr. Orr and filed his stuff.* * * Q. Do you remember, Mr. Cotton, of the time when you had two of the Walkers to ask Mr. Koutsky to come to Sulphur with the idea of taking down this $2,000 deposit and getting this matter cleared up? A. Yes, sir. Q. How soon did that happen after the 10th, if you remember? A. Well, it must have been two or three weeks or something of that kind or probably longer. I could not say exactly about the date, but it was quite a bit. I got notice of this, and I went up there to see him. I says, 'Now, if you will release me and turn back my abstract, clear that all from the record, take all this stuff of that you have caused to be put on there and clear me up and give me a release, I will sign the release, and all the rest of them will, and we will get it where we can get action.' I did not want that money, but only a producing well; I would rather have the well than the $2,000."

When the defendant Frank Walker was on the stand, he made a categorical denial of nearly everything by way of either knowledge of complaint on account of the Orr contract or of Koutsky's demanding his money down from the bank, but his brother, Clyde Walker (one of the defendants and one of the signers of the lease and escrow agreement), when called as a witness on behalf of the defendants, testified as follows:

"Q. I mean after—when this deal blew, did you know that Dr. Koutsky was trying to draw down his money? A. Dr. Koutsky told me so. Q. Did he tell you why he was trying to draw it down? A. He said that there was somebody had filed an affidavit or something, and he talked with my brother about it before me, and my brother told him he did not think there was anything to that. and he explained to him why, and offered to make bond to cover it, and wanted him to go ahead and drill. Q. And you heard that then some time after this escrow agreement was executed? A. Yes, sir. Q. Do you know whether that was within the period of 20 days after it was executed or not? A. No, I could not state."

The plaintiff, Koutsky, did not make written requirements of title of the defendants, but the question of defects or flaws seems to have been handled entirely by parol. In connection with the discussions of the parties about the Orr contract and

affidavit, it is not contended by the defendants that any of them ever made any effort to procure a release from Orr as to his claim of interest, or that they could have procured a release if they had tried—and it would have been impossible for them to have cleared the title by court action against Orr within the time limits of the contract.

The plaintiff, Koutsky, states very positively that his meeting with Cotton at Judge Fagan's office in Sulphur was on the last day of the 20 days allowed in the escrow agreement for making requirements, and this testimony is not contradicted by any witness for the defendants. It is the testimony on both sides that this meeting of Koutsky and Cotton at Fagan's office was for the purpose of making mutual releases and Koutsky's drawing down his money. However, it further appears that Judge Fagan demanded a release from Wade, and the bank wanted releases of the money from the Walkers; but neither Wade nor the Walkers being present so as to be able to execute releases at that time, the meeting came to no result and the parties separated, apparently to get releases all around. Later, Koutsky tendered a release from Wade, but the defendants then refused to execute releases of the money to the bank—and this suit was brought by Koutsky on the 25th day of September, 1929, demanding return of his money. With the petition was also filed at the same time a waiver of summons and an entry of appearance and a disclaimer by Wade of any interest in the subject-matter of the action.

On trial in the district court, and at the conclusion of all the evidence, the trial judge gave the jury a peremptory instruction to find for the defendants for the $2,-000 escrow money, and the plaintiff has appealed to this court.

Defendants in error in the fourth proposition in their brief take the position:

"That his cause was one in the nature of rescission and cancellation, and therefore an equitable action in which the court alone had the authority to construe the instruments, pass upon the evidence, and render judgment without a jury"

—and with this contention that the action was equitable and that there was no jury question involved, we are inclined to agree. Further, from our viewpoint, the admitted facts and the testimony on both sides leave no controlling issue of fact to be submitted to the jury and with respect to which they might make a finding. We shall therefore adopt this view of equitable action and consider the facts and the evidence from that standpoint.

In order to sustain the judgment of the trial court forfeiting plaintiff's escrow money, defendants contend as their first proposition that the plaintiff neither stated nor proved a cause of action.

As to allegation of cause of action, it is sufficient to say that the petition alleged the making of the escrow agreement for good title and with the provision quoted; that the plaintiff further alleged that the title tendered was not good and merchantable on account of the defendants' own contract with Orr and which had been by Orr put to record; that information with respect to this defect of title was by him communicated to the defendants within 20 days; that defendants refused to take any steps to procure release of or to cancel the Orr contract, but, on the contrary, affirmatively stated that they would not do so; that he had demanded return of his money, and that same had been refused.

This skeleton outline of plaintiff's petition is sufficient answer to defendants' insistence that the petition did not state a cause of action. However, the proof of the cause of action is more complex.

As to proof, the execution of the Wade lease and the escrow agreement are admitted; the making of the Orr contract by Frank Walker and Josephine Cotton is not denied; the fact that Orr put this contract and his affidavit to record is not denied. However, it is contended by defendants that their title was good. In case of Pearce v. Freeman, 122 Okla. 285, 254 P. 719, this court, by Judge Hefner writing the opinion, defined a merchantable title as follows:

"A 'merchantable title' is one free from litigation, palpable defects, and grave doubts, and consists of both legal and equitable tite fairly deducible of record."

See, also, to same effect, Campbell v. Harsh, 31 Okla. 436, 122 P. 127; Seyfer v. Robinson, 93 Okla. 156, 219 P. 902; Satterthwaite v. Van Dissen, 99 Okla. 233, 226 P. 583; Ammerman v. Karnowski, 109 Okla. 156, 234 P. 774.

With Orr's contract signed just 22 days before Koutsky's escrow agreement, and with affidavit of public notice on the part of Orr claiming right of lease, defendants' title certainly could not be said to conform to the definition of "merchantable title" quoted above. The words "merchantable title" and "good abstract title," as used in the escrow agreement at bar, are synonymous.

Much argument is spent by counsel for defendants about the fact that plaintiff did not produce at the trial written attorney's opinion on the title, and that written requirements were not made of the defendants. The evidence shows that the abstracts were examined by Mr. Wells, and that he gave written opinion calling attention to the Orr contract and affidavit; but it is not important whether an attorney even examined the title or not, as the escrow agreement was for "good abstract title" and that kind of title was not furnished; nor were written requirements important, since Koutsky and Wade communicated to defendants by parol, and all parties knew and discussed by parol what was the infirmity in defendants' title. While Koutsky did not serve written demand on the defendants that they clear their title of the Orr contract; there was no provision in the escrow agreement that the requirements should be in writing; and the testimony quoted of the defendants clearly shows that complaint was communicated to them by Koutsky with respect to the Orr contract, and not one of them testified that he either did or offered to do anything about it. Instead, the thereafter conduct of all of the parties shows that the only steps taken by anybody were along the line of taking down the escrow money, until after the 20 days had passed, and then the defendants began to claim the money under the forfeiture provision quoted of the contract. The cases of St. Clair v. Hellweg (Mo. App.) 159 S. W. 17, and Beck v. Cleeton (Tex. Civ. App.) 24 S. W. (2d) 914, relied upon by defendants, have no application to the facts at bar.

It appears from the record that immediately after the Wade lease had been acknowledged by Frank Walker and Sarah Walker on the 15th day of August (having been previously signed and acknowledged by the other defendants), it was put to record by Koutsky without waiting for examination of title; and it is contended by defendants that this putting of the lease to record ipso facto constituted acceptance of title by Koutsky. However, the parties themselves seem to have made a distinction between the lease and the escrow agreement and money, as the lease was delivered immediately, but the escrow agreement and money were put in bank subject to examination of title. At the time Koutsky and Cotton met in Judge Fagan's office to arrange for the taking down of the escrow money, Cotton knew that the lease had been recorded; and, in fact, the meeting seems to have been for the purpose of making mutual releases (Koutsky to the lease, and Cotton to the money). In the case of Ammerman v. Karnowski, 109 Okla. 156, 234 P. 774, this court holds:

"A purchaser taking possession and paying part of the consideration prior to the furnishing of abstract under a contract that he shall receive clear title of record, may, if the title tendered is not clear, tender back the title, possession, and all other benefits received and rescind the contract."

The parties themselves not having treated the recording of the lease as an acceptance at the time, there is no reason why the court should give it such construction now.

Considerable effort is made in defendants' brief to justify the forfeiture of plaintiff's money on the alleged ground that plaintiff failed to return defendants' abstracts after examination. The testimony of the defendant Frank Walker as to how or whether plaintiff got the abstracts covering the property in question is as follows:

"Q. Well, do you know whether they were ever delivered to him or not? A. Well. I did not see him take them, but the supposition is that he got them. They were in the bank for him."

On the question of the return of the abstracts, the defendant Henry Cotton testified as follows:

"Q. Now, have you ever seen those abstracts since that time? A. No, sir. Q. Do you know what became of them? A. Well, they was sent back to the bank, and the bank has them, I suppose. Q. You understand that they were returned to the bank? A. Yes, sir."

Under this testimony of the defendants themselves, plaintiff got the abstracts from the bank and returned them to the same place where he got them. Defendants' complaint in this respect is frivolous.

The abhorrence of the ancient rules of equity toward forfeitures has been brought forward and declared in sections 9488, 9489, and 9490 of 1931 Oklahoma Statutes, wherein it is provided that contracts providing for forfeiture shall be void except, "when from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

In the case of Lansford v. Gloyd, 89 Okla., at page 236, 215 P. 198, Judge Branson, speaking for the court, refers to forfeitures as "odious to the law." See, also. Dillon v. Ringleman, 55 Okla. 331, 155 P. 563.

In the case of Geffert v. Geffert, 98 Kan. 57, the court said:

"It is needless to repeat and enlarge upon what this court has said so frequently

to the effect that penalties and forfeitures are obnoxious to judicial minds, and that slight circumstances are eagerly seized to avoid their enforcement when the substantial rights of the parties insisting thereon can otherwise be adequately protected."

In the case of Walker v. McMurchie, 61 Wash. 489, the court said:

"Equity has ever been jealous of the right of forfeiture, and has never enforced it unless the right thereto has been so clear and insistent as to permit of no denial."

Defendants did not tender to plaintiff a "good abstract title"; no action in specific performance in a court of equity could have possibly been bottomed upon the title furnished; the infirmity was the own instrument of the defendants which they had executed, acknowledged, and put in circulation, and with respect to which the plaintiff was guilty of no default. The plaintiff made timely complaint of the infirmity in the title; made timely demand for the return of his money when the defendants refused to even make effort to clear the Orr contract and affidavit from the record; and he has been guilty of no inequitable conduct in the premises which would estop him from claiming his money. The rule quoted above in the McMurchie Case is in clear harmony with our statute against forfeitures, and is sound in morals, in conscience, and in equity. The judgment appealed from must fall when the evidence is measured by its standard.

We might add that the result here is not necessarily dependent upon the rule stated, as the overwhelming weight of the evidence is against the defendants, and their claim to the escrow money fails when measured by any standard of weight of evidence.

The judgment appealed from is reversed and cause remanded, with directions to the trial court to enter judgment in favor of the plaintiff for the return of the $2,000 held in escrow by the defendant bank, and for all further orders necessary to carry this opinion into effect.

The Supreme Court acknowledges the aid of District Judge E. A. Summers, who assisted in the preparation of this opinion. The District Judge's analysis of law and facts was assigned to a Justice of this court for examination and report. Thereafter the opinion, as modified, was adopted by the court.