**PAN MUTUAL ROYALTIES, INC., a Corporation, and Pan Mutual Royalties, a Trust Estate, Plaintiffs in Error,**

**v.**

**Percy E. McELHINEY, Defendant in Error.**

**No. 39725.**

Supreme Court of Oklahoma.

Oct. 9, 1962.

Chas. L. Orr, Oklahoma City, for plaintiffs in error.

· Tom Hieronymus, Woodward, Lewis G. Mosburg, Jr., Fuller Smith, Mosburg & Davis, Oklahoma City, for defendant in error.

JACKSON, Justice.

This is an appeal by defendants in the trial court, Pan Mutual Royalties, Inc., and Pan Mutual Royalties, a Trust Estate, from a judgment for plaintiff, Percy E. McElhiney, quieting his title to certain mineral interests, and cancelling a conveyance of such interests to defendants.

The evidence in the trial court was substantially uncontradicted, and the pertinent facts, stated chronologically, were as follows:

The defendant, Pan Mutual Royalties, a Trust Estate, was created by declaration of trust in May, 1931; it was in form and substance a business trust, commonly called a "Massachusetts" trust. Its purpose was to acquire, hold title to, and manage, various mineral interests in land, giving for them "shares of beneficial interest" to be evidenced by certificates, upon the basis of which dividends would be paid to the holders. The Trust was authorized to issue 10,-000,000 such shares. Both the declaration

of trust and the share certificates contained a requirement that the shares could only be transferred upon the books of the Trust, kept for that purpose by the secretary.

In July, 1931, the trust agreement was amended by adding thereto the following:

"Whenever any certificate shall have been issued in exchange for mineral rights by a conveyance with warranty against incumbrance, and thereafter the rights therein transferred to said Trust Estate should be foreclosed on account of any mortgage or any lien existing at the time of said grant, then the certificate of shares, or beneficial interest issued therefor, *shall* be cancelled of record and such certificate holder *shall* have no right, title or interest in the Trust Estate." (Emphasis supplied.)

In February, 1932, plaintiff McElhiney and his wife conveyed to the Trust certain minerals owned by them under the lands here concerned. The conveyance contained a covenant of warranty. At the same time, and as a part of the same transaction, they executed an "Application for Shares of Beneficial Interest" in the Trust, in which it was specifically recited that the land concerned was subject to a mortgage held by the "School Land Department" in a specified sum. Pursuant to the mineral deed and application, the Trust issued its Certificate No. 239 to McElhiney and his wife, evidencing their ownership of 2000 shares of the trust estate.

In 1940, the mortgage mentioned above was foreclosed. Defendants in the action included the McElhineys and the Trust. In June of that year a decree of foreclosure was entered, and thereafter a foreclosure sale was held and a Sheriff's Deed issued to the State of Oklahoma.

In 1943, McElhiney obtained a Certificate of Purchase covering said lands from the Commissioners of the Land Office, and in 1944 a patent deed was issued to him, conveying the fee simple title less one half of the minerals.

In 1946, McElhiney and his wife gave an oil and gas lease upon the premises to H. M.

Acre, Inc. Said lease was recorded in the office of the County Clerk.

In 1950 the Trust wrote McElhiney a letter stating that the trust interest in the minerals conveyed to it by McElhiney had been lost because of the mortgage foreclosure action and subsequent Sheriff's Deed, and that under the trust agreement, the Sheriff's Deed also "voided the stock which was issued to you". McElhiney was further informed that "This stock has already been cancelled" but he was asked to return the stock certificate "in order to make our records complete". McElhiney testified that he returned the stock certificate; the president of the Trust denied that the Trust received it.

In 1951, the trustees organized a corporation, Pan Mutual Royalties, Inc., for the purpose of taking over the business and assets of the trust, as they were authorized to do under the terms of the original declaration of trust.

On August 28, 1959, McElhiney's attorney wrote the corporation a letter referring to the 1950 letter, and asking that the corporation execute a disclaimer or other reconveyance, "quit-claiming all interest in the minerals" under the land concerned, to McElhiney. On November 23, 1959, the corporation notified McElhiney by letter that it was holding 2000 shares of stock in the corporation "which were issued to you in lieu of the 2000 shares of stock which you still hold in Pan Mutual Royalties, a Trust Estate". It offered to deliver the 2000 shares of stock in the corporation to McElhiney, upon receipt of the certificate for the 2000 shares in the trust estate issued to him in 1932. In January, 1960, plaintiff filed the instant action, which resulted in a judgment quieting his title and cancelling the conveyance of minerals to the Trust.

On appeal, the Trust argues three propositions, all of which are based on the premise that the plaintiff was seeking unilaterally to rescind the transaction because of the misconduct or default of the Trust.

We do not so construe the petition and evidence in this case. The petition asked for a judgment quieting plaintiff's title and cancelling the mineral conveyance; it was not in form or substance a petition for rescission of contract. The petition alleged, and the evidence showed, a set of facts under which the transaction was avoided or rescinded *by its own terms;* specifically by the terms of the 1931 amendment which is quoted in the fourth paragraph of this opinion.

By the terms of the declaration of trust, McElhiney acquired the certificate of shares "subject to and in accordance with the provisions of this instrument and any amendment thereof". The share certificate which he received certified on its face that his ownership of shares in Pan Mutual Royalties was "subject to the written agreement and declaration of trust under and by virtue of which said organization was created" and further recited that "All terms of said agreement and declaration of trust are, by reference, made a part hereof and expressly assented to".

Such being the case, the 1931 amendment to the declaration of trust was a part of the 1932 transaction between McElhiney and the Trust, and its provisions were binding upon both parties. Those provisions are plain and unambiguous, and they do not require judicial construction. They prescribe a contingency (foreclosure of a mortgage existing at the time of the mineral conveyance) upon the happening of which the certificate of shares "shall be cancelled of record", and the certificate holder "shall have no right, title or interest in the Trust Estate".

The validity of the 1931 amendment is not challenged. It served the useful purpose of relieving the trustees of a possible duty, in the faithful exercise of their trust, of prosecuting a suit for breach of warranty in each case where mineral rights were lost by foreclosure; and it served the corresponding purpose of protecting plaintiff here, and others similarly situated, from liability in such a suit. It was therefore a bilateral provision, mutually advantageous to both parties, and not for the benefit of the

Trust only as is argued in the briefs. We cannot say that the transaction between McElhiney and the Trust would have been consummated without this provision.

In its brief on appeal, plaintiff in error (Pan Mutual Royalties) cites Koutsky v. Park National Bank, 167 Okl. 373, 29 P.2d 962; Hooper v. Commercial Lumber Co., Okl., 341 P.2d 596, and other cases to the general effect that a party to a contract cannot rescind the same by his own breach of warranty, and that courts of equity do not favor forfeitures. However, we have previously noted that in the case now before us, plaintiff was not attempting a unilateral rescission of the transaction, but was merely seeking the benefit of a provision of the contract (the 1931 amendment) which itself provided for a mutual avoidance or rescission. No such contract provision as the 1931 amendment was involved in the cases cited by plaintiff in error, and for that reason they are not in point.

Neither is the rule that equity does not favor forfeitures applicable here. See Corbin on Contracts, Vol. 3A, Sec. 748, wherein it is said: ·

> "When it is said that the courts do not favor forfeitures, the meaning is that they do not like to see a party to a contract getting something for nothing."

In view of the 1931 amendment, plaintiff McElhiney did not get "something for nothing". The consideration moving to him in the 1932 transaction was 2000 shares of beneficial interest in the trust estate, and his ownership of those shares was extinguished by the same eventuality which deprived the Trust of the mineral interest concerned.

■ In this connection, the Trust argues that in spite of the requirements of the 1931 amendment, and the statement in its 1950 letter, McElhiney's certificate of shares was never actually cancelled upon the books of the Trust, and the evidence shows that this is true. The inference is that he therefore still owns the shares, and that the judgment of the trial court therefore sustains a forfeiture. However, this line of argument ignores the fact that the trial court's general finding for plaintiff is presumed to include a finding of every material fact necessary to support it. McGrath v. Eichhoff, 187 Okl. 64, 100 P.2d 880. The conflict in the evidence on the issue of whether or not McElhiney returned the certificate to the Trust upon its request is therefore resolved in McElhiney's favor. Such being the case, McElhiney no longer has the certificate and does not own the shares. Moreover, under the 1931 amendment, McElhiney's loss of ownership of the shares was complete when the mineral interests were lost in the foreclosure action, and it was not dependent upon the actual physical cancellation of the shares upon the books of the company. Furthermore, the provision in the trust agreement upon which the Trust here relies—that certificates can only be transferred upon the books of the Trust—applies by its own terms only to a *transfer of shares,* not to a *cancellation* thereof.

■ The Trust also argues that it is entitled to the benefit of the doctrines of estoppel by deed and after-acquired title. However, in urging this proposition, the Trust is in effect attempting to affirm the transaction and retain its benefits, after having rescinded it by agreement. It is well settled general law that an aggrieved party to a contract may either affirm or rescind, and in either case he is entitled to pursue an appropriate remedy; but he may not do both. Doughty v. Laubach, 172 Okl. 42, 44 P.2d 105. This is also true where, as here, the agreement to rescind, or avoid, the contract, is contained in the original agreement. See 12 Am.Jur. Contracts, Sec. 458, to the following effect:

> " * * * when parties stipulate in a contract that the consequences of a breach of the agreement shall be, such stipulation if reasonable is controlling and excludes other consequences. Where a contract prescribes a remedy for a breach, that remedy is generally exclusive."

Throughout this opinion we have referred to the 1931 amendment as an agree-

ment to rescind. We are aware that many of the authorities and text writers by definition restrict the meaning of the phrase "rescission by agreement" to "rescission by *subsequent* agreement". Nevertheless, there appears to be no good reason why the same rules and principles of law should not apply, regardless of when the agreement to rescind is made.

In view of the conclusions reached, it is not necessary to discuss plaintiff McElhiney's argument that the Trust, by its conduct subsequent to the mortgage foreclosure, ratified a prior rescission and is now estopped to deny the same.

The judgment of the trial court is affirmed.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and WELCH, DAVISON, JOHNSON, IRWIN and BERRY, JJ., concur.