## PRIDE *v.* WORMWOOD.

1. Amendment: RULE UNDER THE STATUTE.  Under the liberal provisions of our statute, to *allow* amendments is the *rule*, to *refuse* them the *exception*.

2. —— RULE EXEMPLIFIED.  In an action commenced on a contract not mature, the petition alleged that the defendant was about to dispose of his property with intent to defraud his creditors, and asked an attachment.  There was no allegation that nothing but time was wanting to fix an absolute indebtedness.  To this petition defendant answered without demurring, or otherwise attacking its sufficiency.  Subsequently, and after the contract under which the suit was brought had matured, the parties proceeded to trial upon the issues joined; and, after the introduction of some testimony by the plaintiff, he offered an amendment to his petition to the effect that, at the time of commencing his action, defendant was about to dispose of his property with intent to defraud his creditors; that nothing but time was wanting to fix an absolute indebtedness; that since the commencement of the action the time for performance had expired, and that plaintiff had now a complete cause of action. Judgment was prayed as in the original petition.  In asking this amendment, plaintiff offered to submit to such terms as to costs or continuance as might be imposed.  The court refused to allow the amendment, and instructed the jury to find for the defendant. *Held*, that the ruling was erroneous.

*Appeal from Black Hawk District Court.*

TUESDAY, JUNE 14.

ON the 15th of October, 1866, these parties entered into an agreement in substance as follows: Plaintiff let to defendant 339 head of sheep to be kept for one year. The sheep were to be well cared for, and plaintiff was to have half the wool and lambs.  If any were lost by unavoidable causes, the parties were to make up the same from the lambs.  If, on the other hand, any died for want of good and sufficient care, the losses were to be made up

by the defendant, who also undertook to give plaintiff peaceable possession of the sheep on or about the 15th of October, 1867.

This action was commenced in April, 1867, the petition setting forth the contract, and alleging a failure to properly feed and care for said sheep; that defendant neglected, whereby there was a loss of 250 head to plaintiff's damage in the sum of $1,200, which is *now due*, etc. An attachment was asked on the ground that defendant was about to dispose of or remove his property, etc., without leaving sufficient remaining for the payment of his debts, and with the intent to defraud his creditors. Judgment was also asked for the amount claimed.

The answer admits the contract and the death of the sheep, but denies the negligence, alleging the cause of the death to be the diseased condition of the sheep at the time they were received. By way of counterclaim, damages in the sum of $500 are claimed against plaintiff for breach of his warranty as to the sound and healthy condition of said sheep, etc. An amended answer was filed differing from the original in claiming $1,000, instead of $500, upon the counterclaim. This part of the answer was denied in plaintiff's replication.

In June, 1868, the parties by consent had leave to file amended pleadings, but it does not appear that any were filed under this agreement.

The trial took place in November, 1868. Plaintiff, to maintain the issue on his part, introduced the contract, and also testimony tending to show that defendant received the sheep; that two hundred and fifty of them died for want of proper care and sufficient food before the commencement of this suit; that in September, 1867, 66 head were delivered to plaintiff, being all that remained of the flock, and that defendant failed, to the time of the trial, to make good the loss, etc.

Pride v. Wormwood.

Plaintiff then proposed to amend his petition by setting forth — *First*. The contract and delivery of the sheep as in the original; the loss; that prior to the time of the commencement of the action defendant admitted this; that he could not deliver the sheep because they were dead; that before the contract expired, to wit: in September, 1867, defendant returned sixty-six head of said sheep, and that defendant has neglected, and still neglects and refuses, to return any of said sheep, except as aforesaid, etc. *Second.* That, at the time of commencing said action, defendant was about to dispose of his property with intent to defraud his creditors; that nothing but time was wanting to fix an absolute indebtedness, and that since the commencement, etc., the time for performance, etc., has expired; that plaintiff now has a full and complete cause of action, and judgment was prayed as in the original petition.

In asking to thus amend, plaintiff offered to submit to such terms as to continuance or costs as might be imposed. The first clause of the amendment was allowed, the second denied. There was no other testimony, and, at defendant's request, the court instructed the jury, that, by the contract, plaintiff's right of action for defendant's negligence, etc., did not accrue until the time fixed for the return of the sheep, and, as the action was commenced before that time, plaintiff could not recover.

Verdict and judgment for defendant, and plaintiff appeals.

*Powers & Hemingway* for the appellant.

*Boies & Allen* for the appellee.

WRIGHT, J.—The verdict and judgment were for the defendant, upon the issues joined, and against the plaint-

Pride v. Wormwood.

1. Amendment: iff for costs, taxed at $294.84. In this find-
rule under the
statute.        ing, upon this record, there is error, and the
judgment must be reversed.   It seems to me that, if the
practice adopted in this case is to be followed, our system
of pleading would become a trap for the feet of the
unwary, and that courts would constantly be sacrificing
substance to form.   The cases are very rare, indeed,
where a judge will be justified in instructing a party
" out of court," for a defect apparent upon the face of the
petition, where the defect is one which could be, and is
asked to be, corrected by amendment.   A defendant
ought not to be allowed by answer to take issue upon a
petition — go to a jury upon the testimony, and, after a
full hearing, have the benefit of a point, which could have
been raised by demurrer — and when, if thus raised, the
plaintiff could have obviated the same by an amended
pleading.   Or, if the objection is thus made, the court
should be ever ready to allow amendments upon terms
just and equitable under the circumstances.

Let us look at the facts for a moment.   The affidavit and
petition for the attachment are not very clear in their aver-
ments ; that is to say, it does not very conclusively appear
whether the writ is asked for a debt due or one not due.
The averment of "intent to defraud" is found in the
petition, which is *necessary* to obtain an attachment when
a debt is not due, and not necessary, if it is due, at the
time the action is commenced.   In other words, if the
proceeding is under § 3174 of the Revision, the fraudu-
lent intention need not be averred.   If under § 3178, it
must be stated if the party relies upon an intended dis-
position of the property.   If the affidavit was good under
the last section, or if the plaintiff was proceeding there-
under, then there remains no question as to his right to a
judgment (the proof warranting it of course) after the
demand was due.   This right is clear enough under

§ 3180. And, indeed, with defendant's consent, final judgment could be rendered before the maturity of the demand. If not good. and the debt was not matured, this fact appeared fully from the petition. Defendant, instead of demurring, answered, denying all the averments and setting up his counterclaim. Plaintiff replied, and upon the issues thus joined the parties went to trial before a jury. At this time there was no dispute as to the maturity of plaintiff's claim. At least there remained no question, but that the time had passed for the return of the sheep. It was just as clear that there had been a return of all that remained, and that five-sixths of them were dead and could not be returned. The only question remaining was that really made by the pleadings whether the loss was attributable to plaintiff or defendant. Now suppose the point made by this instruction had been raised by demurrer — and in thus raising it, there was no difficulty — plaintiff could, before all these costs were made, have amended so as to proceed as for a claim not yet matured, or he may have been able to amend so as to show beyond all question such an abandonment of the contract, or misuse and conversion of the property, as to make defendant liable at once. Or, still again, if unable to amend, it was due to justice and to plaintiff that the question should have been raised at an earlier stage of the case, so that he might determine what other remedy, if any, was open to him, and this immense bill of costs would thus have been saved. The case is thus ruled, without standing upon the full ground announced in *Nollen* v. *Wisner*, 11 Iowa, 190. Following that, this instruction was manifestly erroneous. I put the case, upon the ground that, under the circumstances, the amendment asked should have been allowed. Without holding that, after the demand matured, plaintiff in amending would have to proceed as upon a claim *not due*

Pride v. Wormwood.

at the time of the commencement of his action, I only hold that, as he seems to have elected to trust his case in this way, he should not have been denied the right. It was against the spirit and policy of our system of practice, to drive him from court, after the case was fully at issue, and when the parties, as far as can be seen, were as fully prepared as they ever could be to try the *only real matter* in controversy.

The liberality of the provisions of our statute on the subject of amendments is well known and understood.

The rule is to *allow* the exception to refuse amend ments. This is clear enough from numberless provisions and has been often announced in substance. *Seevers* v. *Hamilton*, 11 Iowa, 66, and the many cases there cited; and see also *Draper* v. *Ellis*, 12 id., 316; *Nettman* v. *Schramm*, 23 id. 521; *Williams* v. *Miller*, 10 id. 344; *Fulmer* v. *Fulmer*, 22 id. 230, and cases there cited; *Crawford* v. *Paine*, 19 id. 172; Miller Pl. & Pro. ch. 17, p. 269, *et seq.*

I do not say that the right to amend is an absolute one. In this case, however, the request was reasonable; defendant's position was necessarily a surprise upon plaintiff; the refusal worked most manifest prejudice; plaintiff was ready and proffered to submit to terms as to costs, etc., (and these terms the court could impose without such offer). And under such circumstances I am clear that the amendment should have been allowed.

This opinion, it is understood, has the approval of COLE, J. The Chief Justice (DILLON) and Justice BECK, without committing themselves to the foregoing views, concur in the conclusion reached, that the judgment should be reversed upon the ground that plaintiff's right of action, by the terms of the contract, and under the facts proved, was complete at the time the action was commenced; and, as a consequence that the instruction

given by the court below was erroneous.   Upon *this* view the other judges express no opinion.

Reversed.