## CAMPBELL v. HARSH.

No. 1073.    Opinion Filed March 12, 1912.

(122 Pac. 127.)

1.    **DEEDS—Attestation—Certificate of Acknowledgment.** An officer's certificate of the grantor's acknowledgment of the execution of a deed filed for record is a sufficient compliance with a requirement of attestation by witnesses to the grantor's signature by mark.

2.    **VENDOR AND PURCHASER—"Perfect Title."** A perfect title is one free from litigation, palpable defects, and grave doubts, and consists of both legal and equitable title fairly deducible of record.

3.    **SAME**—Performance by Plaintiff. A purchaser under a contract to make a perfect title is not required to resort to evidence dehors the record. It is not sufficient that the title tendered is capable of being made good by the production of affidavits or other oral testimony. It must be good of record. And where specific performance is granted of a contract upon the tender of an abstract capable of being made good by the production of affidavits or other oral testimony only, **held**, that the purchaser should not have been required to accept such title, and that the court erred in granting specific performance.

(Syllabus by the Court.)

*Error from District Court, Kay County;*
*W. M. Bowles, Judge.*

Action by Thomas Campbell against L. C. Harsh. Judgment for defendant, and plaintiff brings error. Reversed, and remanded for new trial.

*Everest, Smith & Campbell,* for plaintiff in error.

*A. W. Comstock* and *J. F. King,* for defendant in error.

TURNER, C. J. On June 28, 1907, Thomas Campbell, plaintiff in error, sued L. C. Harsh, defendant in error, in the district court of Kay county. The petition substantially states that on March 23, 1907, they entered into a certain contract in writing for the purchase by plaintiff from defendant of a certain tract of land situate in Noble county for $13,704, payable $500 cash, which was paid, the remainder to be paid "upon delivery of a deed conveying good sufficient title to said premises, accompanied by an abstract of title, showing perfect title"; that possession had never been delivered; that plaintiff had received no rents and profits; that on March 29, 1907, defendant submitted four abstracts, which were rejected on advice of plaintiff's attorneys; that the title was shown therein to be defective in certain particulars (naming them); that by reason thereof the title to said land was unsafe, and by reason of defendant's failure to comply with his contract plaintiff was entitled to and had demanded a return of the $500 aforesaid, and to a lien upon said land to secure a return thereof; and closed with a prayer to that effect. For answer, defendant admitted the execution of the contract and the payment of the $500, but denied the breaches,

as alleged. He further denied that the title by abstract was defective, but alleged the same to be good, perfect, and indefeasible, and complied with the contract; that he is, and had always stood, ready, willing, and able to convey said lands to plaintiff with good title thereto as agreed, and thereby tendered plaintiff, attached thereto and a part thereof, a deed, together with said abstract and certain affidavits, and prayed that said title be by the court held perfect, and said deed to convey a good and perfect title; that plaintiff be required to accept same; and for specific performance of said contract, with judgment for the balance of the purchase money, etc. After demurrer to the answer filed and overruled, and reply thereto, there was trial to the court, and judgment for defendant as prayed. Plaintiff brings the case here.

After plaintiff had proved a *prima facie* case, assuming the burden of proof, defendant, in order to show a tender of such title as he agreed to make, introduced in support of his abstract of title to the lands, and as the basis of his title thereto, four certificates of trust or "patents" from the United States, in effect, that the allottee therein, an Indian residing on the Otoe reservation, had been allotted the lands therein described, to be held by the United States in trust for him, his heirs, etc., for 25 years, after which a patent was to issue therefor to him or his heirs in fee, discharged of said trust, etc. He then, for the purpose of establishing the first link in the chain of his title, introduced in evidence, over objection, deeds from Maude E. Pipestem, John Pipestem, Charles Six Bits Pipestem, Mary H. Coonskin,. and Maude E. Pipestem, each deed being in usual form, reciting the grantor therein to be the heir or heirs of the allottee of the land therein conveyed, and acknowledged both before the Indian agent and a notary public, and approved by the Secretary of the Interior, and duly filed for record. The specific objection to the introduction of these deeds is that the separate deed of Maude E. Pipestem, dated September 15, 1903, to the S. E. ¼ of section 21, township 22 N., range 2 E. of the I. M., being allotment No. 16, reciting her to be "daughter and sole heir of Missouri Chief, deceased, an Otoe Indian," the original allottee or patentee, and the deed of John Pipestem, Charles Six Bits Pipestem, and Mary

Coonskin, of the same date, to the S. W. ¼ of section 21, township 22 N., range 2 E., of the I. M., being allotment No. 54, reciting them to be "brothers and sisters, only heirs, of J. Roe Young, deceased, an Otoe Indian," the original patentee, and the deed of Maude Pipestem, dated January 15, 1906, to the N. E. ¼ of section 21, township 22 N., range 2 E. of the I. M. reciting her to be "heir of Hilda Missouri Chief, deceased, an Otoe Indian," the original "patentee," and the deed of Charles Six Bits Pipestem, dated March 28, 1903, to the N. E. ¼ of section 22, township 21 N., range 2 E. of the I. M., being allotment No. 117, reciting him to be "father and sole heir of Fannie Pipestem, deceased, an Otoe Indian," all subsequently filed for record, were signed by said several grantors by mark only and witnessed by two persons subscribing their names thereto as such.

In support of this objection it is urged that, as there was no evidence that either of the subscribing witnesses to any one of these deeds signed the name of any one of said several grantors thereto, none of said deeds were shown to have been properly executed, and were void. To this it is sufficient to say that, since said signing and witnessing is fair on its face, if it were necessary to uphold the validity of these deeds, it might be fairly presumed, since the law required it, that one of the subscribing witnesses *did* sign the name of the grantor. But it is unnecessary to indulge such presumption, for the reason that acknowledgment before the proper officer was, in effect, an adoption of the signature thus made by the grantor, which was all that was necessary.

In *Watson v. Billings*, 38 Ark. 278, 42 Am. Rep. 1, the governing statute is identical with the one in force here. (Comp. Laws 1909, sec. 2965). Both, in effect, provide that the mark of one who cannot write is not a signature or subscription, unless the person writing his name writes his own name as a witness to it. The instrument under construction there was a deed of release by a widow of her dower, and was signed by her with her mark only, and acknowledged before a justice of the peace in substantial compliance with the law, but was never filed for record. The court said:

"The Civil Code, in laying down rules of construction

(Gantt's Digest, sec. 5625), provides 'that the word "signature," or "subscription" includes "marks" when the person cannot write, his name being written near it and witnessed by a person who writes his own name as a witness.' This was not necessary at common law to constitute a signature by mark. We can see obvious reason for the provision, however, in the thousands of uneducated persons, without experience in business or habits of preserving property, who had recently been clothed with all the rights of citizenship. Whilst the acknowledgment by the grantor, before a proper officer, and the filing for record to make it evidence, may, perhaps, be considered as an adoption of the written name as a signature, regardless of the mark, yet in the case of an instrument which had not been both acknowledged and filed, the mark should not be considered a signature, without the name of the person writing the grantor's name being also subscribed."

In *Blair et al. v. Campbell et al.* (Ky.) 45 S. W. 93, the court said:

"The deed in question was made June 25, 1856, and was from Francis Jackson Mann to D. C. Ferguson, as trustee, to be held by the trustee for the benefit of Mann and his wife, Elizabeth, for their lives, and, after their death, to the children of either or both as may be alive. This deed is signed by Mann with his mark, not attested by any witness, but was duly acknowledged July 8, 1856, before the county clerk of Grant county, and was duly recorded in Pendleton county in November, 1856. We are referred to no statute requiring signature by mark to be attested by a witness, and we are of opinion that this is not obligatory to the validity of an instrument. Yet it ought, as a matter of public safety in business transaction, to be done. However, in this case, the certificate of acknowledgment of the county clerk of Grant county, to which full faith and credit must be given, shows that the deed was produced by Mann in the office, and was acknowledged by him to be his act and deed. If there were a requirement of attestation to the signature of Mann, we think this certificate of the clerk would be sufficient in that respect."

And in the syllabus:

"The certificate of acknowledgment of a county clerk to a deed is sufficient compliance with a requirement of attestation by witness to the maker's signature by mark."

It is next contended that, if these deeds were properly in evidence, the abstract fails to show a perfect title, because it nowhere appears therein that said grantors are the sole heirs of the

original patentees, as recited in their deeds set forth in the abstract. It is not contended that such recitation is any evidence of the act recited. Recognizing the necessity of supplying the omitted connection, defendant, over objection, introduced in evidence testimony of certain witnesses, together with the affidavits of Sam Bassett, Iowa Coonskin, Jacob Black Hawk, and James Clelhorn, in effect that the grantors in said deeds were the sole heirs of the original patentees, and that no administration was ever had on any of their estates, but that all their debts and liabilities, including funeral expenses, had been paid. It is urged by plaintiff that this testimony and these affidavits were no part of the abstract tendered him; that, had the latter been so made, not being entitled to record, they constituted no part thereof, and that he should not be compelled to accept a title resting in part in parol. The point is well taken. In *Henderson v. Beatty,* 124 Iowa, 163, 99 N. W. 716, a perfect title is defined to be "one which shows the absolute right of possession and of property in a particular person." In *Turner v. McDonald,* 76 Cal. 177, 18 Pac. 262, 9 Am. St. Rep. 189, it is said: "A perfect title is one that is good and valid beyond all reasonable doubt." In *Sheehy v. Miles,* 93 Cal. 288, 28 Pac. 1046, it was held to be absolutely necessary, in order to fully satisfy the covenant of a perfect title, that the title should be free from litigation, palpable defects, and grave doubts, should consist of both legal and equitable title, and be fairly deducible of record.

In Warvelle on Abstracts (2d Ed.) 30, it is said:

"In the absence of probative proceedings, or a judicial determination of the rights of the heirs, titles depending on descent are to be viewed with jealousy and accepted with great caution."

And on pages 36, 37, and 38:

"Though the title vests in the heirs by operation of law immediately on the death of the ancestor, yet purchasers desire, and should have, affirmative evidence that the person asserting same is justified in so doing, and this is furnished by the proceedings of the probate court. In all abstracts the interval of title between the deed by which the decedent became seised and that which purports to be a conveyance by the heirs should be filled by a summary or abridgment of the proceedings in probate, show-

ing the death of the intestate, proof of heirship by those asserting title, and a satisfactory settlement of the estate.   *   *   *   Few titles are to be executed with greater caution than those asserted, and purported to be conveyed, by persons claiming to be the heirs at law of the person last seised, in the absence of full compliance with prescribed regulations concerning the descent and distribution of intestate estates.   Too frequently, from various motives, no probate is ever had, and the children of the decedent unite to convey their interests, describing themselves in such conveyances as 'the children and heirs at law' of such decedent.   *   *   *   In the United States, the paucity of family records and the method of compiling same would render pedigrees of little value, even were they in use; and the examining counsel, if doubts arise, usually resorts to the more doubtful alternative of an affidavit to prove the fact of heirship and bolster up the title, the affidavit in a majority of instances being entitled to less credence than the deed it supplements.   A title resting on no better foundation than a deed of this character, unless reinforced by the statute of limitations, is entitled to little consideration, and is liable to be defeated at any time before the bar of the statute has interposed."

In *Howe v. Coates,* 97 Minn. 385, 107 N. W. 397, 4 L. R. A. (N. S.) 1170, 114 Am. St. Rep. 723, the suit was to compel specific performance of a contract, in effect, providing for the conveyance of a marketable title.   Speaking to this point, the court said:

"A purchaser under such a contract is not required to resort to evidence *dehors* the record.   It is not sufficient that the title is good in fact; that is, capable of being made good by the production of affidavits or other oral testimony.   It must be good of record.   *   *   *   In *Fagan v. Hook* [134 Iowa, 381, 105 N. W. 155, 111 N. W. 981], *supra,* the court said:   'The title may be good; but one to whom an abstract showing a good title has been promised as a condition precedent is not bound to accept any evidence thereof, except that contained in the abstract.   The vendee in such a case is not required to accept or rely upon parol evidence of title, or information *dehors* the record, or the word of the vendor.'   It was therefore held that the purchaser was not obliged to accept the title, which was bad of record, although capable of being made good by evidence showing adverse possession for the statutory period of time.   *Carolan v. Yoran* [104 App. Div. 488], 93 N. Y. Supp. 935; *Fagan v. Hook, supra; Noyes v. Johnson,* 139 Mass. 436, 31 N. E. 767; *Page v. Greeley,* 75 Ill. 400; *Gwin v. Calegaris,* 139 Cal. 384, 73 Pac. 851; *Bruce*

*v. Wolfe,* 102 Mo. App. 384, 76 S. W. 723; *Zunker v. Kuehn* [113 Wis. 421, 88 N. W. 605], *supra.* 'A title is not marketable where it depends necessarily upon matter *in pais,* which is in itself a ·doubtful fact, and never can be determined or established, except by bringing every party into court, certainly others besides the immediate party to the suit for specific performance.' *Rutherford Land & Imp. Co. v. Sanntrock* (N. J. Ch.) 44 Atl. 938; *Ruess v. Ewen,* 34 App. Div. 484, 54 N. Y. Supp. 357, affirmed [165 N. Y. 633] 59 N. E. 1130; *Smith v. Death,* 5 Madd. 371, 21 R. R. 314. This rule was applied in *Austin v. Barnum,* 52 Minn. 136, 53 N. W. 1132. The record there disclosed an unsatisfied mortgage, and its date showed that it might have been, and inferentially was, barred by the statute of limitations; but, as this might depend upon matters which did not appear of record, the title was held to be unmarketable. The action was to recover the money which had been paid under the contract, and the court said: 'Because of the mortgage, which of record was unsatisfied and undischarged, the title was defective, and respondent's right of action accrued. The time for the payment of the debt may have been extended by agreement of the· parties, or partial payments may have been made, operating to prevent the running of the statute of limitations against the mortgage security, thus keeping it still alive."

And again (97 Minn. on page 395, 107 N. W. on page 401, 4 L. R. A. [N. S.] 1170, 114 Am. St. Rep. 723), the court said: "A contract 'to convey unto the second party by warranty deed with an abstract showing a good title' refers to the record title which might be epitomized on the abstract. Such a contract calls for a good title on the abstract, or at least of record. *Fagan v. Hook* [134 Iowa, 381], 105 N. W. 155, 111 N. W. 981; *Spooner v. Cross* [27 Iowa, 259], 102 N. W. 1119; *Martin v. Roberts* [127 Iowa, 218], 102 N. W. 1126."

It being, then, the general rule, as quoted approvingly in the Howe case, *supra,* from Sugden on Vendors, c. 10, sec. 3, that:

"A court of equity is anxious to protect the purchaser and to give to him reasonable security for his title, not compelling him to take a title without knowing whether it is good or bad. The inclination of the court is in favor of the vendee, and the vendor claiming to be exempted from the general rule is required clearly to establish a case of exception. To enable equity to enforce the specific performance against a purchaser, the title to the estate ought, like Caesar's wife, to be free even from suspicion; for

it would be an extraordinary proceeding for a court of equity to compel a purchaser to take an estate which it cannot warrant to him. It has, therefore, become a settled and invariable rule that a purchaser shall not be compelled to accept a doubtful title; and the court will not have regard to its own opinion only, but will take into account what the opinion of other competent persons may be."

—without attempting to pass upon defendant's title or to say whether it is good or bad, we are of opinion, as the abstract, for the reasons stated, was so defective as to fail to show a "perfect title," as agreed, that plaintiff should not be compelled to accept it and take chances in a contest over the land with other parties claiming to be the heirs of the original allottees, and for that reason he was justified in refusing so to do. and in demanding a return of the $500 paid upon the contract.

In view of what we have said, there is no merit in the contention that, time not being the essence of the contract, defendant of right prevailed under his cross-petition, and that, having brought into court a perfect title, as agreed, the court was right in decreeing specific performance. The court having erred in so decreeing, and there being no merit in the remaining assignments, the judgment is reversed, and the cause remanded for a new trial, to be proceeded with in accordance with this opinion.

All the Justices concur.