**TULL et al. v. MILLIGAN.**

No. 24670.   July 9, 1935.

Morris & Wilhite, for plaintiffs in error.

Hall & Thompson, for defendant in error.

PER CURIAM. The plaintiffs in error were defendants, and the defendant in error was plaintiff, in the trial court. The parties will be referred to herein as they appeared in the lower court.

About August 1, 1929, the defendant Tull, acting through his agents, the defendants W. N. Courtney and R. D. Courtney, partners, doing business under the name Courtney & Son, entered into negotiations with the plaintiff, Milligan, for the sale to the latter of 160 acres of farm land. These negotiations resulted in a meeting of the contracting parties in the office of Courtney & Son at Anadarko, where a contract in writing was entered into, whereby Tull agreed to sell and Milligan agreed to purchase, on terms and conditions set forth in this contract, the land in question.

As the contract so executed is the basis upon which all the parties must rest their claims, we here set it forth in full:

"Contract of Sale of Real Estate.

"This agreement, made and entered into this 7th day of October, 1929, by and between Joseph H. Tull, a widower, of the first part, and C. E. Milligan of the second part, Witnesseth:

"Whereas, first party is the owner of the northeast quarter (NE¼) of section thirty (30), in township nine (9), north, of range ten (10), W. I. M., Caddo county, Oklahoma, and desires to sell same to second party, and,

"Whereas, second party desires to purchase the above described real estate from the first party,

"It is hereby mutually agreed that first party will sell to the second party the real estate hereinabove described for the sum of $10,750, the said sum to be paid to first party by the second party, as hereinafter set out.

"It is agreed that as a part of the consideration above mentioned second party will assume a first mortgage of $5,500 and a second mortgage of $1,500, both of which mortgages are of record, and the said second mortgage being due as follows, towit: $500 due on January 1, 1930, $500 due on January 1, 1931, and the remaining $500 due on January 1, 1932; it is further agreed that second party will upon the signing of this agreement pay to Courtney & Son the sum of $1,250 in cash as earnest money, that first party will this day execute a warranty deed to second party and deliver the same to Courtney & Son, who will be escrow holders of the said sum of $1,250 and of said deed; and it is further agreed that on January 1, 1930, second party will pay to first party the further sum of $2,500 in cash and that when said sums, towit: $1,250 and $2,500 have been paid to first party, that the escrow holders shall be authorized and directed to deliver to said second party the said warranty deed.

"It is further agreed that first party shall furnish an abstract of title showing a good and sufficient merchantable title to the said real estate, which abstract shall be brought down to date, within five days from the date hereof, and it is further agreed that the possession of said real estate shall be delivered to second party on January 1, 1930, when the sums herein mentioned are paid, with the privilege of the first party to gather any crops that might remain on said lands, all of which said crops must be gathered by February 1, 1930.

"It is further agreed that first party will pay the 1929 taxes and interest up to December 31, 1929.

"In witness whereof, the parties hereto have hereunto set their hands and affixed their signature the day and year first above written.

"Joseph H. Tull,
"First Party.

"C. E. Milligan,
"Second Party."

On February 18, 1931, the plaintiff commenced this action in the district court of Oklahoma county against the defendants to recover the sum of $1,250, the cash payment placed in the hands of the defendant Courtney & Son by the plaintiff, and which, upon completion of the land transaction, Courtney & Son were to pay over to the defendant Tull to be credited on the purchase price of the property, as provided in the contract.

This recovery was claimed on the ground that the defendant Tull had breached his contract in several particulars, but in the trial of the cause plaintiff directed his efforts to establish, and here urges, only the

following: That the defendant Tull failed to procure or tender to plaintiff an abstract of title to the land such as the contract contemplated and required; that the only abstract tendered was a supplemental abstract, and that this showed an $8,500 first mortgage which covered the property plaintiff was purchasing and other land, while the contract provided for a first mortgage of but $5,500, and which the plaintiff agreed to assume. In addition, this supplemental abstract showed other mortgages in the sum of $1,500 and an oil and gas lease. As plaintiff in his contract agreed to assume $1,500 second mortgage indebtedness, no objection was made to these second mortgages, which totaled that amount. Objection to the presence of the oil and gas lease was waived by the plaintiff, and the court instructed the jury not to consider it in arriving at their verdict.

The defendant Tull entered a general denial, and further answering, alleged, in substance, that he had fully complied with all the requirements and conditions of the contract, and that the plaintiff without just cause failed and refused to carry out its terms on his part. The defendant further pleaded a counterclaim against the plaintiff based on the alleged damages sustained by reason of plaintiff's failure to comply with the contract.

The Courtneys filed their separate general denial and referred to and adopted as their further answer the answer of the defendant Tull; and further alleged that they were escrow holders of the $1,250 involved in the action, and that they held the same for the benefit of the person entitled thereto, except that $500 thereof was owing to them as commission for services rendered in effecting the contract between Tull and Milligan. Proper replies were made to the answers.

As will appear from reading the contract, the plaintiff was to assume a first mortgage of $5,500 and a second of $1,500; and was required to put up in the hands of Courtney & Son as escrow holders $1,250, and on January 1, 1930, pay an additional $2,500, at which time he was to receive a warranty deed to the property. The defendant Tull was required to furnish an abstract of title to the property, which abstract was to be brought down to date, within five days from the date of the contract; that possession of the property was to be delivered to Milligan on January 1, 1930, when the sums mentioned in the contract were paid. The abstract to show good and sufficient merchantable title.

Within the five-day period mentioned in the contract, defendant Tull delivered to Milligan a supplemental abstract. In a letter bearing date December 17, 1929, the plaintiff rejected this abstract, and raised certain objections to items appearing therein, and made certain demands and requirements.

This letter was as follows:

"Mr. Joseph H. Tull        Hinton, Oklahoma,
"Gracemont, Oklahoma December 17, 1929.
"Dear Sir:

"On October 30th I entered into a contract with you for the purchase from you of the N.E.¼ of section 30, township 9, north, range 10, west of the I. M., situated in Caddo county, Oklahoma. By the terms of the contract the purchase price of the above real estate was $10,750. I was to assume as a part of this purchase price a first mortgage of $5,500 and a second mortgage of $1,500, both of which mortgages the contract describes as being of record, and also to pay you the sum of $3,750, $1,250 to be deposited with Courtney & Son as escrow agents, to be held by them together with the deed from you to me for the property until January 1, 1930, at which time, by the terms of the contract, I am to pay you the remaining $2,500 of the purchase price and receive a deed to the land. You agreed in the contract to furnish an abstract of title showing good and sufficient and merchantable title to the real estate. The abstract was to be furnished me within five days from the date of the contract. You have breached your contract in the following respects:

"First, you have never furnished me with an abstract to the land—you have only furnished me with a supplemental abstract, which commences with a mortgage from Frank P. Lyon and wife to the Porter Mortgage Company, dated January 13, 1927.

"Second, the supplemental abstract shows that there is a mortgage on the land to the Porter Mortgage Company for $8,500, which mortgage also covers another quarter section of land.

"Third, in the contract I never agreed to assume an $8,500 mortgage on the land described in the abstract on other lands, but I did agree to assume a $5,500 mortgage on this land. The supplemental abstract also shows a mortgage to Frank Lyon for $500 and a mortgage to Courtney & Son for $1,000, both of which are shown by the supplemental abstract to be unpaid. The two mortgages last mentioned were not mentioned in our contract. In the contract there is mentioned a second mortgage for $1,500. I am not making any special complaint about the

last two mortgages, if they are the ones you had in mind when the contract was drawn, since they total the amount of $1,500, being the amount of the mortgage described in your contract with me. However, I do not intend to purchase this land as long as it is covered by an $8,500 mortgage, even though another quarter section of land is mortgaged as security for the loan. Of course, you know each piece of property would be liable for the entire amount of the loan.

"You and I have talked about this matter before and you have promised me to straighten the matter up, so that the land I have attempted to purchase from you will be covered only by a $5,500 mortgage and a $1,500 mortgage. This deal was to be consummated by January 1, 1930, and this letter is to notify you that unless I am furnished an abstract by that time showing good title in you and mortgages against the land only in the amount specified in the contract of sale, above mentioned, I shall elect to declare the contract void and no effect, on account of your breach of the terms of the contract and will take such action against you for damages sustained by me by reason of your breach of the contract, as I may be able to bring.

"You will, therefore, govern yourself accordingly.

"Yours very truly,
"(Signed) C. E. Milligan."

It is not claimed by the defendants that a complete abstract was at any time tendered to Milligan, but defendants contend that they had in their possession in the office of Courtney & Son such an abstract on January 1, 1930, and that it was the understanding that the transaction was to be closed at that place. They also urge that the plaintiff in the letter above quoted extended the time in which an abstract could be obtained to that date, and in this we think they are correct. The contract did not fix a place of meeting of the parties on January 1st, and the testimony offered on the question was conflicting. Defendants testified that there was a verbal understanding that they were to meet at the office of Courtney & Son, while the plaintiff testified that there was no such understanding.

Considerable testimony was heard concerning the abstract held at the office of Courtney & Son on January 1st for delivery to Milligan, as well as to what was done to obtain a partial release of the $8,500 mortgage. In the course of his testimony the defendant W. N. Courtney stated as follows:

"Q. Now, Mr. Courtney, in response to the sending of those checks, you may state to the jury whether or not you obtained a release, a certified copy of which has been introduced in evidence, of the original mortgage? A. Yes, sir. Q. As a part of it? A. Yes, sir. Q. And when did you receive it? A. The last day of December or the first day of January, I am pretty sure the last day of December, in the evening. Q. Now, did you have that there the first day of January? A. Yes, sir; I had it there the first day of January."

On cross-examination this witness further said:

"Q. You offered him the original abstract, when? A. Well, I called him up four or five days before—or, along about the 27th or 28th of December, and then, on January 1st, Mr. Tull was in the office and he insisted I would call him up again. Q. You had your papers then, and told him that you had them, didn't you? A. I have—I had the abstract. Q. You had the abstract? A. Yes, sir. Q. The abstract was brought down to date? A. Yes, sir, it was. Q. And contained everything that was called for in the contract? A. Except the separation of the release of the mortgage. Q. Except the release of that mortgage? A. I did not have that, I didn't call about that until the first day of January, when I had it attached to the abstract, then. Q. All right, did you ever, did you then at that time have an abstract with that included in it, the release of the mortgage, which you say you had on January 1st? A. I had the original attached to the abstract, but I had not recorded it."

The defendant R. D. Courtney on cross-examination testified:

"Q. Now, then, this abstract that you say you had down there, or your father had down there at the office on January 1st when he talked with him, when you say he talked to Charles Milligan, you say your father told him that he had a complete abstract? A. Yes, the original and complete abstract. Q. The original and complete abstract; all right, did that abstract have in it an assignment of the $8,500 mortgage to the Illinois Bankers Life Assurance Company? A. I do not know. Q. And did it have in it the release of the mortgage that has been introduced here in evidence? A. No, sir. Q. It did not have that? A. It had it attached to, but not shown in the abstract."

The mortgage release referred to was a partial release of the $8,500 mortgage, and was as follows:

"Partial Release of Mortgage.

"In consideration of the payment of $3,000, Illinois Bankers Life Assurance Company, a corporation, does hereby release mortgage made by Frank P. Lyon and Nellie

M. Lyon, his wife, and which is recorded in Book 60 of Mortgages, page 238 of the records of Caddo county, state of Oklahoma. Insofar as it covers the southwest quarter of section 20, township 9 north, range 10, west, and no more in Caddo county, state of Oklahoma.

"In witness whereof, Illinois Bankers Life Assurance Company has caused these presents to be signed by its president, and its corporate seal to be affixed this 28th day of December, 1929.

"Illinois Bankers Life Assurance Company, by W. H. Woods, President. Attest: Robert M. Work, Secretary."

This partial release was properly acknowledged and was filed for record on January 14, 1930, and· recorded in Book 32 of ——, page 355. The land described in this release is other property than the land Milligan was purchasing of Tull.

The $8 500 mortgage was executed by Frank P. Lyon and wife to Porter Mortgage Company, and by the latter company assigned to Illinois Bankers Life Association. An assignment of the mortgage made by Illinois Bankers Life Association to Illinois Bankers Life Assurance Company was put in evidence, which assignment was filed for record January 7, 1930. It therefore appears that the assignment of the mortgage by the Illinois Bankers Life Association to the Illinois Bankers Life Assurance Company, and the partial release of the mortgage by the latter company, were not of record on January 1, 1930, and could not have appeared in the abstract which defendants claim they had obtained and were ready to tender to the plaintiff on that date. In fact it is admitted by the defendants that these instruments were not in the abstract, but that the originals were attached to the abstract.

It therefore appears as an undisputed fact that this abstract was not, in itself, a complete abstract. But defendants contend that the abstract, taken in connection with the partial release and the assignment, which were later placed of record, was such as to substantially comply with the requirements of the contract. They further urge that, as time was not as of the essence of the contract, they were entitled to a reasonable length of time in which to meet objections had the plaintiff appeared at the office of Courtney & Son on January 1st and received it, and he or his attorney had thereafter made any. This is a well-recognized rule, but one which may be waived; or the facts in a given case may be such as

to make it inapplicable. And in this case evidence appeared which, if credited by the jury, was sufficient to eliminate this rule. As before stated, the contract did not provide for a meeting place of the parties on January 1st, and the testimony as to an oral understanding as to the meeting place is in conflict. But even though it be conceded that there was an oral understanding that the parties were to meet at the office of Courtney & Son for the January 1st meeting, in view of evidence offered by both plaintiff and defendants, we are of the opinion that it could not materially affect the result of this appeal. We will briefly refer to some of the incidents in the record which bear on this question, as well as on the sufficiency of the abstract and the partial release of the $8,500 mortgage offered by defendants.

In plaintiff's letter to defendant Tull of the date December 17, 1929, the following statements, among others, appear:

"First, you have never furnished me with an abstract to the land—you have only furnished me with a supplemental abstract, which commences with a mortgage from Frank P. Lyon and wife to the Porter Mortgage Company for $8,500, which mortgage covers another quarter section of land. * * * This deal was to be consummated by January 1, 1930, and this letter is to notify you that unless I am furnished with an abstract by that time showing good title in you and the mortgages against the land only in the amounts specified in the contract of sale, above mentioned, I shall elect to declare this contract void and of no effect, on account of your breach of the terms of the contract, and will take such action against you for damages sustained by reason of your breach of the contract as I. may be able to bring."

In this letter Tull was informed that Milligan required that the $8,500 mortgage be reduced to $5,500, and that this reduction appear in the abstract to be furnished, as by the contract provided. As has been observed, this requirement was not complied with. The abstract obtained, according to the testimony of the defendants, did not have in it a release, partial or otherwise, of the $8 500 mortgage.

Under date October 14, 1929, Mr. Samuel L. Wilhite, the attorney whom Milligan employed to examine the supplemental abstract, wrote plaintiff as follows:

"Mr. Courtney just called the writer on the telephone ·and told him to mail the Tull abstract to Courtney & Son and that they,

Courtney & Son, would mail to you their check for $1,500 and end the matter. As we are working for you, please advise by return mail what you wish to do."

Plaintiff testified that upon receipt of this letter he got in his car and drove over to see Tull and had a conversation with him about the matter. He stated that he asked Tull what the trouble was "and did they want to back out?" Relating the conversation further, he said Tull replied:

" 'I don't want to back out.' I said, 'I don't want to back out either.' I said, 'I want the land, provided you can get this straightened up.' 'Well,' he says, 'we are going to get it straightened up.' He said, 'You go back home and just rest easy.' "

Regarding this conversation, the defendant Tull testified:

"Q. And do you recall when that was? A. As to the date, I couldn't. No, it was just a very short time after the date of this letter that he had received. Q. The letter seems to have been dated the 14th of October? A. Yes, sir; and this was just a short time after that. Q. Well, what did you tell him about you going through, you were going ahead with it or not? A. I told him that we had already made application to the insurance company and the loan company to have this mortgage separated and was going through with it just as soon as could time to work so we was going to. Q. You heard this testimony and his two daughters testify to the effect that you told him to rest easy? A. Yes, I told him to rest easy. Q. And you said what they said you did? A. Yes, sir; I said it."

With reference to this conversation, May Milligan, one of the daughters, testified:

"Dad asked him if he had got things straightened up, and he said 'No.' but that they would get it straightened up and to go home and rest easy and they would let him know, and so we drove back."

Eva Milligan, the other daughter, testified:

"Q. Well, did your father introduce Mr. Tull to you? A. Yes, and at that time asked him if he had got things straightened up. 'Well, no, not yet,' he says 'I will drive in.' And Dad says, 'Well, are you tired of waiting, I am ready to settle up.' And Mr. Tull says, 'Well, you go home and rest easy, we'll have things fixed up right away.' 'Well,' Dad says, 'all right, let me know,' and he said he would."

Milligan testified that neither Tull nor anyone else thereafter informed him that the business had been put in condition for closing up. He denied that W. N. Courtney called him on the telephone on January 1st or at any other time and advised him that the abstract was ready and invited him to come to Anadarko and close the deal. He stated that the Courtneys called him over the telephone but one time, and that that was before the contract was made.

The plaintiff testified that he went to the Tull place on January 1st and demanded possession of the property, and that in answer to his demand Tull said, " 'No, you cannot have possession of the place, yet,' so he just kind of—he was sore."

"Q. Well, was anything at the time said as to whether or not the title to the real estate had been straightened out? A. Not a thing; no, sir."

Mr. Tull in his testimony denied having any conversation whatever with Milligan on January 1st. He further testified that Milligan came to his place on January 2nd and informed him, Tull, that he, Milligan, had abandoned the entire transaction. Milligan denied going to the Tull place on January 2nd and denied having a conversation with Tull on that date.

Apropos to this and other testimony of like import, portions of which were conflicting, the court gave instructions No. 9 and No. 10. The defendants assign as error the giving of these instructions. They object to the first paragraph of instruction No. 9, and state their objections as follows:

"The partial release properly identified the $8,500 mortgage by giving the names of the mortgagors and the book and page at which it is recorded, and it therefore follows that when recorded, it was sufficient evidence of the release of the $8,500 down to $5,500."

The first paragraph of instruction No. 9 was as follows:

"9. You are further instructed that testimony has been introduced in behalf of the defendant Tull for the purpose of establishing that he procured a reduction of the $8,500 mortgage to $5,500, and he has introduced in evidence a partial release of that mortgage, which was a release of that mortgage as to other lands included therein, but not, however, of the land being sold by Tull to Milligan, but is, however, an acknowledgment of the payment of $3,000 on said mortgage; but you are instructed that this release in and of itself was not sufficient record evidence of the release of this mortgage down to $5,500 as to require plaintiff to accept the title as that bargained for in his contract."

We have examined the authorities cited in support of this contention, and are very

well satisfied that the cases cited present a correct exposition of the law applicable to the facts in those cases. As stated in 41 C. J. 785:

"Where a mortgage is given to secure the payment of a specific debt, payment of such debt, as a general rule, in the absence of a contrary intent, extinguishes or discharges the mortgage and the lien thereof."

But this is quite different from saying that such payment discharged and releases such lien of record, where the same has been recorded. The contract in this case required that an abstract be furnished by the seller showing a first mortgage of $5,500 and a second mortgage of $1,500 only. The supplemental abstract shows a first mortgage of $8,500 covering the land involved in the contract and other land. A partial release was procured, which recited:

"In consideration of the payment of $3,000. Illinois Bankers Life Assurance Company, a corporation, does hereby release mortgage made by Frank P. Lyon and Nellie M. Lyon, his wife, and which is recorded in Book 60 of Mortgages, page 238 of the records of Caddo county, state of Oklahoma, in so far as it covers the southwest quarter of section 20, township 9 north, range 10, west, and no more, in Caddo county, state of Oklahoma. * * *"

The land released was land in which Milligan was not concerned. So far as the record of the Tull land is concerned, it is evident that the partial release did not, by its terms, relieve that land of any part of the $8,500 mortgage. Whether the payment of the $3,000 was, as a matter of law, a discharge of this mortgage to that amount need not be discussed. The contract in this case required such discharge to appear of record and in the abstract to be furnished. The purchaser was not to be required later, as his task or at his charge, in case the matter came in question, to have to prove that the $3,000 payment was, pro tanto, a discharge of the $8,500 mortgage.

In the case of Ammerman v. Karnowski, 109 Okla. 156, 234 P. 774, the third paragraph of the syllabus reads as follows:

"'Clear title of record' connotes freedom from apparent defects, grave doubts and litigious uncertainties, and is such a title as a reasonably prudent person, with full knowledge, would accept. A title dependent for its validity on extraneous evidence, ex parte affidavits, or written guaranties against the results of litigation is not a clear title of record, and is not such title

as equity will require a purchaser to accept."

In the body of the opinion, the court quotes from the decision rendered in case of Campbell v. Harsh, 31 Okla. 436, 122 P. 127:

"A purchaser under a contract to make a perfect title is not required to resort to evidence de hors the record. It is not sufficient that the title tendered is capable of being made good by the production of affidavits or oral testimony. It must be good of record."

In the case of Pearce v. Freeman, 122 Okla. 285, 254 P. 719, this court defined merchantable title as follows:

"A merchantable title is synonymous with a perfect title or a marketable title. A merchantable title is one free from litigation, palpable defects, and grave doubts, and consists of both legal and equitable title fairly deducible of record."

The partial release was not recorded until January 14, 1930, at 3 p. m., hence could not have appeared in any abstract of the record held by the defendants on January 1, 1930. Furthermore, there was no assignment of the $8,500 mortgage to the makers of this release on record at that time. It is claimed by the defendants that such an assignment had been procured and on January 1, 1930, was in the hands of the Courtneys at their office at Anadarko, but was not recorded until January 7, 1930, hence, it likewise could not have been in the abstract.

In Jennings et al. v. New York Petroleum Royalty Corporation, decided November 27, 1934, 169 Okla. 528, 43 P. (2d) 762, this court quoted with approval the law, as above set forth, announced in Campbell v. Harsh, supra. In the body of the opinion, in discussing the question as to whether the plaintiffs had furnished an abstract showing merchantable title, this court said:

"It appears to the court that the two vital issues involved in this case are, first, whether there was an enforceable contract entered into between plaintiffs and the defendant; second, whether the plaintiffs furnished an abstract showing merchantable title."

In the body of the opinion, in discussing the second proposition, the court, among other things, said:

"The abstract shows that in the year 1924, S. J. Eddy and husband executed a mortgage on the premises involved in this suit to the Equitable Farm Mortgage Company, a corporation, which mortgage was duly filed

for record the same year. The abstract further shows that the Equitable Farm Mortgage Company assigned this mortgage to Anna M. Brown, which assignment was duly recorded the same year. The plaintiffs offer in evidence a release of this mortgage by Anna M. Brown. This release was executed on the 16th day of January, 1928, but was not filed for record until February 17, 1928, nearly one month after the delivery of the abstract. Consequently the abstract did not show a release of this $2,300 mortgage. * * * The court is of the opinion that the abstract did not show merchantable title in McClellan for the reason that there was an unreleased oil and gas lease of record, and for the further reason that there was a recorded mortgage in the sum of $2,300 which was not released of record as shown by the abstract."

The court then quotes with approval from the syllabus in the case Campbell v. Harsh, supra.

"A purchaser under a contract to make a perfect title is not required to resort to evidence de hors the record. It is not sufficient that the title tendered is capable of being made good by the production of affidavits or other oral testimony. It must be good of record." Miller v. Scott, 134 Okla. 278, 273 P. 363.

Instruction No. 10 was as follows:

"You are further instructed, on the other hand, that if you find and believe from the evidence that plaintiff was not notified by defendant W. N. Courtney that the abstract and partial release of the $8,500 mortgage was ready for plaintiff's inspection, and that on the 1st day of January, 1930, the plaintiff went to the home of the defendant Tull and was there told by defendant Tull that the matter of the change and partial release of the mortgage had not yet been effected, and that he could not proceed to then perform the contract, the plaintiff would not be required to go to Anadarko or anywhere else, but would be justified in refusing to proceed further with the transaction, and demand and receive the return of the $1,250 deposited by him, and under such circumstances, the plaintiff would be entitled to a verdict in this case."

Defendants present as error that portion of this instruction wherein the court advised the jury that if they found that the plaintiff was not notified by Courtney & Son that the abstract and partial release were in their office for the inspection of the plaintiff, and that on January 1st plaintiff went to the home of defendant Tull and was by him told that the matter of the change and partial release of the $8,500 had not been effected, and that he could not proceed to carry out the contract, the plaintiff would not be required to go to Anadarko or elsewhere, but would be justified in refusing to proceed further with the transaction. The specific objection seems to be that Tull did not, on that occasion, make the statement that the change and partial release of the $8,500 had not been effected and that he could not proceed to carry out the contract.

It will be recalled that in the conversation had between Milligan and Tull at the latter's home shortly after October 14, 1929, as this conversation was related in the testimony of the plaintiff's two daughters, and which testimony was by the defendant Tull admitted to be correct, there was a clear understanding that Tull was to notify Milligan when the title matters were straightened out. It will also be recalled that Milligan testified that no notification of the kind had been given him by either Tull or the Courtneys. Whether or not such a notice had been given was, of course, a question for the jury. We think this question was fairly submitted in instruction No. 10.

We have had occasion to allude to the January 1st conversation, and which Tull testified did not occur. Whether such a conversation took place, as well as what was said on that occasion, was also a question of fact to be passed on by the jury. Milligan stated that he made a demand on Tull for the possession of the property, and that the latter refused to give possession. If the jury credited Milligan's statements, it was faced with this situation: January 1st was the date fixed in the contract on which the business was to be closed and possession of the property given to Milligan. In going to the Tull place and demanding possession, there was shown on the part of plaintiff, both by conduct and verbal expression, disposition to carry out the contract. Without making any demand or requirement of the plaintiff, and without in any manner explaining or excusing his action, the defendant refused to give possession.

If the court in giving instruction No. 10 required the jury to find more than was necessary as conditions precedent to plaintiff's right of recovery, this error, if error it was, was not prejudicial to the defendants so long as the instruction was in accord with the evidence, and fairly presented the law applicable to the evidence appearing in the case, and was not calculated to confuse or mislead the jury.

Section 252, O. S. 1931, is as follows:

"The court, in every stage of action, must

disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment will be reversed or affected by reason of such error or defect." Producers Oil Company v. Eaton, 44 Okla. 55, 143 P. 9; Big Jack Mining Co. v. Parkinson, 41 Okla. 125, 137 P. 678; Snyder v. Stribling, 18 Okla. 168, 89 P. 222. This case was affirmed in the Supreme Court of the United States, 215 U. S. 261. This court held:

"Error cannot be predicated on portions of the charge where, when they are considered in connection with the entire charge, there is no reasonable ground for supposing the results would have been different had they not been given. Snyder v. Stribling, 18 Okla. 168, 89 P. 222, judgment affirmed (1909) Snyder v. Rosenbaum, 30 S. Ct. 73, 215 U. S. 261. 54 L. Ed. 186, 2 Oklahoma Digest (West) vol. 2, page 644.

Holmes v. Ellis, 99 Okla. 27, 225 P. 538. In the syllabus of this case this court said:

"Although instruction is incorrect, if it is clearly apparent from the whole record that no prejudice in fact resulted therefrom, the error will not be considered."

We think that instructions Nos. 9 and 10 were given in response to, and in substantial accord with, the evidence in the case, and that no prejudice to any substantial right of the defendants arose therefrom, and the giving of them was not error.

In instruction No. 6, attention was called to the terms of the contract, and the court advised the jury that in order to comply with the terms of the contract it was necessary that Mr. Tull, among other things, remove an oil and gas lease shown to be on the land. Defendants claim error in this instruction because in the trial of the cause it was admitted that objection to the presence of the oil and gas lease had been waived by the plaintiff. We find no merit in this objection, for in instruction No. 8 the court specifically advised the jury that such waiver had taken place, the concluding sentences of this instruction being as follows:

"* * * And by reason of his making said certain requirements and failing to object to the title to said land on the ground of the existence of the oil and gas lease, he has waived the objections to its existence and you will not consider it in arriving at your verdict."

The court was requested to instruct the jury to return a verdict in favor of the defendants, and the court's refusal so to do was assigned as error. This cause comes well within the rule, many times announced by this court, "that in an action at law where there is any competent evidence reasonably tending to support the verdict of the jury and no prejudicial errors of law are shown to have been committed, the verdict and findings of the jury will not be disturbed on appeal." Herndon v. Board of County Commissioners, 158 Okla. 14, 11 P. (2d) 939; Govan v. McCord, 155 Okla. 278, 11 P. (2d) 141; Schuster v. McDaniel, 156 Okla. 233, 10 P. (2d) 391.

An expression of this court on this question is found in the recent case Missouri-Kansas-Texas Ry. Co. v. Embry, 168 Okla. 433, 33 P. (2d) 481:

"Sufficiency of evidence to sustain a judgment will be determined in the light of evidence tending to support the same, together with reasonable inferences deducible therefrom, rejecting all evidence of adverse party in conflict therewith."

We think the instructions given fully and fairly presented the law applicable to all issues in the case and that no substantial rights of the defendants were prejudiced thereby.

We are of the opinion that the issues in this case went to the jury with proper instructions, and that the verdict of the jury was sufficiently sustained by the evidence, and no error appearing in the record sufficient to authorize a reversal of the judgment, the judgment of the trial court should be, and the same is, affirmed.

The Supreme Court acknowledges the aid of Attorneys L. A. Foster, Chas. R. Alexander, and Walter H. Thomas in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Foster and approved by Mr. Alexander and Mr. Thomas, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, WELCH, and CORN, JJ., concur.